STATE OF NORTH CAROLINA v. RONALD LEE McCOY

No. 31A86

(Filed 3 September 1987)

1. **Constitutional Law § 61; Jury § 5.2— jury venire—urban dwellers excluded— no error**

   Urban dwellers in Rutherford County do not constitute a distinct group because Rutherford County is a predominately rural county with small cities and the values and attitudes of the residents of the urban areas of the county are not so different from the values and attitudes of the residents of the rural

areas that they will bring to the judicial process potentially unique and varied perspectives. Sixth Amendment to the United States Constitution.

**2. Constitutional Law § 60; Jury § 5.2— evidence of systematic exclusion of blacks insufficient**

Defendant's evidence was not sufficient to show that blacks had been systematically excluded by the method used to select jurors in Rutherford County where the method used tended to exclude the urban population, but there was no evidence of the precise number of blacks excluded, and an attorney who testified that very few blacks had served on juries since 1 January 1984 testified on cross-examination that, until the past few weeks, the number of blacks on jury panels had been in accordance with the percentage of blacks in the population.

**3. Homicide § 24.1— instructions—presumption of malice—no error**

The trial court did not err in a murder prosecution by instructing the jury that the law implied that the killing was done with malice if the State proved beyond a reasonable doubt that defendant had intentionally killed the victim with a deadly weapon. Defendant did not except at trial to that part of the charge, defendant offered no evidence of self-defense and very little evidence of a killing in the heat of passion based on adequate provocation, and, assuming error, it was not so fundamental as to affect a basic right of the defendant.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment of life imprisonment entered by *Beaty, Judge,* at the 28 October 1985 Special Criminal Session of RUTHERFORD County Superior Court. Heard in the Supreme Court 15 April 1987.

The defendant was tried for the first degree murder of John Kingsley Ramsey. The State's evidence showed that on 12 July 1985, the defendant and Ramsey were both incarcerated in the Rutherford County jail. The two men were working in the kitchen of the jail. The defendant started to check the oven and Ramsey told him the food needed further cooking. The defendant removed a butcher knife from a drawer and said, "I'll show you." The defendant then stabbed Ramsey. Ramsey died as a result of the stabbing.

The defendant testified in his own defense. He admitted he had stabbed Ramsey and attributed it to racial tensions pervading the jail which eventually caused him to "snap." Other inmates testified to racial animosity in the jail. They testified further that the defendant, a black man, had been abused by white men while he was in a cell which was occupied predominantly by white men.

A forensic psychiatrist testified that in his opinion, the defendant had not formed a specific intent to kill at the time of the stabbing. The defendant was found guilty and sentenced to life in prison. He appealed.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for the defendant appellant.*

WEBB, Justice.

The defendant first assigns error to the denial of his motion, made before trial, to quash the bill of indictment. His motion to quash was based on the denial of his right to have a jury selected from a representative cross section of the community. The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees a defendant the right to be tried by a jury selected from a representative cross section of the community, in this case Rutherford County. In order to make a prima facie case that he has been denied this right, a defendant must show that (1) a group alleged to have been excluded from selection for the jury is a distinctive group, (2) that the representation of the group within the jury venire is not fair and reasonable with respect to the number of such persons within the community, and (3) the underrepresentation of the group is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 58 L.Ed. 2d 579 (1979); *Taylor v. Louisiana,* 419 U.S. 522, 42 L.Ed. 2d 690 (1975); *State v. Price,* 301 N.C. 437, 272 S.E. 2d 103 (1980); and *State v. Avery,* 299 N.C. 126, 261 S.E. 2d 803 (1980). The rationale for this rule has been said to be, ". . . [T]he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility." *Taylor,* 419 U.S. 522, 530-531, 42 L.Ed. 2d 690, 698. In order to be a cognizable group, such a group must bring to the judicial process potentially unique and varied perspectives and the values and attitudes of the group must be substantially different from those of other segments of the community. *Price,* 301 N.C. 437, 446, 272 S.E. 2d

103, 110. Blacks, daily wage earners and females have been held to be cognizable groups. *See Thiel v. Southern Pacific Co.*, 328 U.S. 217, 90 L.Ed. 1181 (1946).

In this case, evidence at the hearing on the motion to quash the indictment showed that in 1984 Rutherford County began using a computer to generate a master jury list. The names of all registered voters and all residents of Rutherford County who hold driver's licenses were placed on the jury list. Duplicate names and the names of all those under eighteen years of age were removed from the lists. The computer was then instructed to number each name. It did this by looking at certain designated spaces, whether letters or blank spaces, in each potential juror's name and address and assigning a number according to the letter or blank space. After numbers had been assigned to each potential juror, the computer placed the names of potential jurors in numerical order based on the numbers which had been assigned. The jurors were then picked by starting with the lowest number and taking every other number. There were many more jurors picked with rural addresses than addresses within the three towns in Rutherford County which are Rutherfordton, Forest City and Spindale. This was explained by an expert in computer programming as having occurred because rural addresses which have route and box numbers have a blank space at a certain place in each address to which the computer assigns a low number. The blank space caused an extraordinary number of persons with rural addresses to be selected for the jury.

The defendant's evidence also showed that 51.3% of the blacks in Rutherford County do not have rural addresses. The defendant contends this eliminated a disproportionate number of blacks from the venire. There was not any evidence of precisely how many blacks were selected to serve on juries, but Robert Harris, an attorney practicing in Rutherford County, testified that he had been present at all terms of court in the county since 1 January 1984 and very few blacks had been on jury panels. He said he could not recall how many blacks were on the panel for the trial that was to be conducted that week. On cross examination he was asked whether he had not observed that if there were 30 to 35 potential jurors in the courtroom, it is normal to see from 3 to 5 blacks in the group which would be in accordance with the percentage of the black population in the county. Mr. Harris

answered, "I would say that it has been, but, for some reason, the last few weeks it does not seem to have been the case."

The defendant does not contend the method of selecting the jury does not comport with the statutory requirements. *See* Chapter Nine of the North Carolina General Statutes. Nor does he contend that the jury commission in Rutherford County intentionally discriminated against any group. He contends the method used had the effect of systematically excluding a cognizable group from consideration for jury service. If he could show this, he would be entitled to relief. *Duren*, 439 U.S. 357, 58 L.Ed. 2d 579; *Taylor*, 419 U.S. 522, 42 L.Ed. 2d 690; and *Price*, 301 N.C. 437, 272 S.E. 2d 103.

[1]  The defendant contends the residents of the cities of Rutherford County comprise one cognizable group that was excluded from consideration for jury service. We hold that in Rutherford County urban dwellers do not constitute a distinctive group. The evidence in this case showed that 53,787 people live in Rutherford County. The populations of the cities in the county are as follows: Forest City 7,648, Spindale 4,226, and Rutherfordton 3,410. It is apparent that Rutherford County is a predominantly rural county. The cities in it are small. We do not believe that in Rutherford County the values and attitudes of the residents of the urban areas are so different from the values and attitudes of the rural areas, that they will bring to the judicial process potentially unique and varied perspectives. This prevents the residents of the cities in Rutherford County from being a cognizable group. *Price*, 301 N.C. 437, 446, 272 S.E. 2d 103, 110.

[2]  The defendant also contends the method used by Rutherford County in selecting jurors excluded a disproportionate number of blacks from consideration. He says this is so because blacks compose a much higher percentage of the urban population than the rural population and by excluding the urban population a disproportionate number of blacks were excluded. There is no evidence of the precise number of blacks excluded. The jury lists do not show race. The defendant introduced testimony by an attorney practicing in Rutherford County that very few blacks had served on juries since 1 January 1984. On cross examination he said in effect that until the last few weeks, the number of blacks on the jury panels had been in accordance with the percentage of blacks

in the population. This is not sufficient evidence to show that blacks had been systematically excluded by the method used to select jurors in Rutherford County. The defendant's first assignment of error is overruled.

[3] The defendant next assigns error to the charge. In charging the jury on first degree murder the court said,

> If the State proves beyond a reasonable doubt that the defendant Ronald Lee McCoy, killed the deceased, John Kingsley Ramsey with a deadly weapon or intentionally inflicted a wound upon John Kingsley Ramsey with a deadly weapon that proximately caused the deceased's death, the law implies, first, that the killing was unlawful and, second, that it was done with malice.

The defendant did not except to this charge at the trial. In charging on second degree murder the court said,

> If the State proves beyond a reasonable doubt that the defendant intentionally killed John Ramsey or intentionally inflicted a wound with a deadly weapon that proximately caused his death, again, you may first infer that the killing was unlawful and, second, that it was done with malice, but you're not compelled to do so. You may consider this evidence along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice. If the killing was unlawful and was done with malice, then the Defendant would be guilty of second degree murder.

The defendant contends the court erred by telling the jury that if the State proved beyond a reasonable doubt that the defendant had intentionally killed Ramsey with a deadly weapon, the law implied the killing was done with malice. The defendant says this violates the rule of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508 (1975), which he contends holds that this instruction unconstitutionally relieves the State of proving malice, an element of first degree murder, beyond a reasonable doubt. The defendant did not except at trial to this part of the charge. Rule 10(b)(2) of the Rules of Appellate Procedure provides that an assignment of error may not be made to any portion of the charge unless an objection is made to it before the jury retires. In *State*

*v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), this Court adopted the plain error rule under which we may consider an assignment of error to the charge, although an objection was not made at the trial. We stated it to be as follows:

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking it its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*Id.* at 660, 300 S.E. 2d at 378 (quoting *United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir. 1982) ).

In determining whether the plain error rule should apply in this case, we have considered *State v. Rynolds*, 307 N.C. 184, 297 S.E. 2d 532 (1982), in which this Court approved an instruction virtually identical to the questioned instruction in this case. This Court said the instruction was proper because no proof of lack of malice was offered. This holding was based on the premise that if the jury finds beyond a reasonable doubt that the defendant intentionally killed the victim with a deadly weapon and the defendant offers no evidence of a heat of passion killing on sudden provocation and no evidence the killing was in self-defense, there is a presumption that the killing was with malice. The defendant in this case offered no evidence of self-defense and very little evidence of a killing in the heat of passion based on adequate provocation. The defendant introduced evidence that he had been abused by white inmates in the jail, but there was no evidence he was abused by the man he killed. The fact that the deceased told him the food needed further cooking is not adequate provocation for finding heat of passion which would negate malice. *See State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971). If we were to con-

sider this assignment of error, it is doubtful that we would find error.

We also consider *Rose v. Clark*, 478 U.S. ---, 92 L.Ed. 2d 460 (1986), in which the United States Supreme Court held that an error of the type for which the defendant contends, should be subject to a harmless error analysis. In determining whether error is harmless the Court said,

> Apart from the challenged malice instruction, the jury in this case was clearly instructed that it had to find . . . beyond a reasonable doubt as to every element of both first- and second-degree murder. . . . Placed in context, the erroneous malice instruction does not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction.

*Id.* at ---, 92 L.Ed. 2d at 471. The Court said further,

> When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury. In that event the erroneous instruction is simply superfluous: the jury has found, in Winship's words, "every fact necessary" to establish every element of the offense beyond a reasonable doubt.

*Id.* at ---, 92 L.Ed. 2d at 472 (citations omitted).

In this case the jury has found beyond a reasonable doubt the predicate facts, an intentional killing or the intentional infliction of a wound with a deadly weapon which proximately caused death, upon which the inference of malice was made. It is a logical inference. The jury also found beyond a reasonable doubt that defendant murdered his victim after premeditation and deliberation. This finding renders harmless any instructional errors on the element of malice which improperly relieve the State of its burden of proof. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982).

Finally, if this part of the charge was error, it was not so fundamental as to affect a basic right of the defendant. We cannot

say that absent the error, if indeed there was error, the jury would have reached a different result. *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986). We cannot invoke the plain error rule.

In the trial we find

No error.