STATE OF NORTH CAROLINA v. CAMERON LAWRENCE KUEGEL

No. COA08-587

(Filed 3 February 2009)

**1. Search and Seizure— consent—totality of circumstances**

The trial court did not err by finding that defendant's consent to a search of his apartment during which controlled substances were found was voluntarily given based on the totality of the circumstances even though the officer had falsely told defendant that he had followed and stopped people leaving defendant's apartment who had marijuana or cocaine in their possession.

**2. Appeal and Error— preservation of issues—failure to argue—failure to raise at trial court**

Although defendant contends the trial court erred in a drug case by failing to conclude the discovery of drugs in defendant's home was the fruit of an unreasonable seizure and that discovery of cocaine on his person while at the jail was likewise fruit of his illegal detention, these arguments are dismissed under N.C. R. App. P. 10(b)(1) because neither of these issues was raised or argued before the trial court.

Appeal by defendant from judgment entered 7 January 2008 by Judge Charles H. Henry in New Hanover County Superior Court. Heard in the Court of Appeals 19 November 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*Jeffery S. Miller for defendant-appellant.*

BRYANT, Judge.

Defendant appeals from a judgment entered 7 January 2008 pursuant to a guilty plea in which defendant pled guilty to trafficking in cocaine, possession with intent to manufacture, sell, or distribute methylenedioxy-n-methylamphetamine (MDMA), and possession of a controlled substance on the premises of a prison or a jail. Prior to entry of his plea, defendant made known his intent to appeal from the denial of his motion to suppress. For the reasons stated below, we affirm.

At a suppression hearing held on 7 March 2007, Sergeant Joseph LeBlanc, of the New Hanover County Sheriff's Department, testified that on or about 11 December 2004, he received a phone call from a known informant. The informant, who had previously proven to be reliable in the past, provided unsolicited information that a white male, named Cameron, was selling marijuana and cocaine from a residence off Wallace Road in New Hanover County. Ten days later, on 21 December 2004, Sgt. LeBlanc also received a call from an anonymous tipster who provided the following information:

> [A] white male named Cameron occupied the bottom floor garage apartment at 5017 Pine Needles Drive, . . . he was selling powder cocaine and marijuana, . . . the house was on the north side of the road, it was a two story, . . . his window had an AC unit, . . . the front door was to the left, . . . [the tipster] had been in the apartment when purchases of marijuana and cocaine had been conducted, . . . Carmeron was a white male in his mid-20s with a shaved head and was approximately 5'10" tall.

Sgt. LeBlanc testified that Pine Needles Drive, where the suspect resided, was off of Wallace Road.

On this information, Sgt. LeBlanc decided to "drive out to the residence and see what was going on." Following Sgt. LeBlanc in a separate vehicle were Detectives Wyatt and Whitlock. The house at the address matched the description provided by the tipster, and after observing the house for a short period, Sgt. LeBlanc informed the detectives that he was going to conduct a "knock and talk."

Sgt. LeBlanc approached the house wearing plain clothes. Detectives Wyatt and Whitlock were approximately three houses away. Sgt. LeBlanc knocked and waited until a white male approximately 5'10" with a shaved head answered the door. Sgt. LeBlanc informed the man that he was "a detective with the Sheriff's Office." The male did not consent to allow Sgt. LeBlanc inside the house but did step outside to talk. At that time, Sgt. LeBlanc took his badge out and informed the male that he was with the Vice and Narcotics Unit. At the suppression hearing Sgt. LeBlanc gave the following testimony regarding what transpired:

LeBlanc: I explained to him—I used a common street term, I told him that he had been narced on, which, basically means that somebody told on him. And I told him that I knew that he had both marijuana and cocaine in the residence and I wanted consent to search his apartment without a warrant.

. . .

I told him that someone in his neighborhood had complained that during the night, people would drive up to his residence, stay for a short period of time and leave. I told him that I had conducted surveillance of his apartment and observe[d] [a] lot of people coming and going after staying a short period of time. I told him that I followed—I had follow[ed] people that left his apartment and stopped their cars after they were out of the neighborhood. Each time I made a stop, I had either recovered marijuana or cocaine.

. . .

Counsel: Had you, in fact, done that?

LeBlanc: No, sir.

Counsel: When—after you told him all of these things, did he say anything further to you . . . .

LeBlanc: After he looked down at the ground and shook his head back and forth, he looked up at me and he said, "What if I give you what I got?"

. . .

STATE v. KUEGEL

[195 N.C. App. 310 (2009)]

LeBlanc: I explained to him that I could not leave his residence until I was sure that all the dope, money and paraphernalia that he had, I was going to leave with.

. . .

I told him that if he did not feel conformable [sic] giving me consent to search, that I would leave two detectives at the residence and apply for a search warrant . . . .

Counsel: When you told him that, did he say anything to you in response to your statements?

LeBlanc: [T]he Defendant asked me, "If I cooperate, what will you do for me?"

. . .

I replied to him that I could not make him any promises, but if he did not have, and I'm quoting myself, "If he didn't have a half a kilo or a dead body in his apartment, I might be able to keep him out of jail for the holiday." So that he could handle his charges after Christmas.

Counsel: When you told him that, what did he do, if anything, in response to your statements?

LeBlanc: He walked around, he got the dog from the house and placed him inside a fence in the backyard. Then he walked back over in front of me and he said, "Come on, you guys can come in and look around. I'll show you where everything is."

. . .

He seemed, somewhat, reluctant. So I stopped him and I took my left hand and I touched his left shoulder and I stopped him before he entered the apartment and told him if he did not feel comfortable letting us look in the apartment, he could say no. And I told him that I wouldn't take his refusal personally or be mad at him if he did not want to give consent. I told him that if he wanted to, and I'm quoting myself, "explore another the [sic] legal option," that he could do that.

I explained that if he wanted, I could leave Detectives Wyatt and Whitlock at his apartment and apply

STATE v. KUEGEL

[195 N.C. App. 310 (2009)]

for a search warrant. And the Defendant told me, "That's not necessary. Come in." I asked him again if he was sure. He said, "Yeah." That's when Detectives Wyatt and Whitlock and I followed the Defendant inside the apartment.

With defendant's assistance, Sgt. LeBlanc, along with Detectives Wyatt and Whitlock, conducted a search of the apartment. They recovered a large bag of cocaine along with several small bags of cocaine amounting to 30.9 grams, a large vacuum sealed bag of marijuana amounting to 286 grams, a box of sandwich bags, a Radio Shack police-type scanner, a plastic bag containing three-and-a-half pills of MDMA or Ecstasy, a pack of rolling papers, some suspected cocaine residue, a plastic digital scale and $540 in cash. Defendant was not arrested but allowed to turn himself in to police after the holidays.

On 5 January 2005, defendant reported to the New Hanover County Jail where he was searched incident to arrest. Found in defendant's possession was 1.2 grams of cocaine.

On 27 September 2007, the trial court entered an order denying defendant's motion to suppress, concluding that defendant's consent to search his residence was freely and voluntarily given. On 7 January 2008, defendant pled guilty to trafficking in cocaine; possession with intent to manufacture, sell, or deliver MDA / MDMA; and possession of a controlled substance on the premises of a prison or jail, with notice that he would appeal the trial court's denial of his motion to suppress. The trial court entered judgment in accordance with said plea. Defendant appeals.

_____

On appeal, defendant raises two primary arguments: (I) that the State failed to carry its burden of proving defendant's consent was freely and voluntarily given and (II) that the discovery of drugs in defendant's home and on defendant's person at the jail was the direct result of an unreasonable seizure by police.

*I*

[1] Defendant first argues that the State failed to carry its burden of proving defendant's consent was freely and voluntarily given and not coerced. Defendant argues that his consent to search was not voluntary as it was the product of deceptive practices by the investigating officer. We disagree.

"On a motion to suppress evidence, the trial court's findings of fact are conclusive on appeal if supported by competent evidence." *State v. Campbell*, 359 N.C. 644, 661, 617 S.E.2d 1, 12 (2005) (citation omitted). Where error is not assigned to any specific finding of fact, "the findings of fact are not reviewable, and the only issue before us is whether the conclusions of law are supported by the findings, a question of law fully reviewable on appeal." *Id.* at 662, 617 S.E.2d at 13 (citations omitted).

> It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. Consent, however, has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given. For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary.

*State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (internal citations and quotations omitted).

"[T]he question whether a consent to a search [is] in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862-63 (1973). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.* at 248-49, 36 L. Ed. 2d at 875. "In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence." *Id.* at 227, 36 L. Ed. 2d at 863. *See, e.g., State v. Sokolowski*, 344 N.C. 428, 474 S.E.2d 333 (1996) (holding no coercion where eight officers disarmed the defendant prior to sitting him down on a couch and asking for consent to search his house); *State v. Fincher*, 309 N.C. 1, 305 S.E.2d 685 (1983) (holding no coercion where officers told the defendant that only he could consent to the search but if he did not consent the officers would get a search warrant and search anyway); *see also State v. Barnes*, 154 N.C. App. 111, 572 S.E.2d 165 (2002) (holding an officer's deception, telling a pedophile that his victim was pregnant, in an effort to elicit a confes-

sion, was not sufficient to overcome the defendant's will and render his confession inadmissible).

Here, after the suppression hearing, the trial court made the following findings:

6. The defendant spoke to Detective LeBlanc outside the apartment at his own request . . ., and Detective LeBlanc told him he had received complaints of drug activity and requested consent to search the defendant's residence without a warrant, and Detective LeBlanc further told defendant that he had been watching defendant's apartment and followed people leaving there who had drugs such as marijuana or cocaine in their possession upon leaving defendant's apartment, despite the fact that Detective LeBlanc had not made any such stops of defendant's house visitors;

7. After speaking for a short time outside his residence, defendant asked Detective LeBlanc what would happen if he gave him what he had, and the detective said he would have to confirm that there was no other contraband present and he could go to get a search warrant if defendant did not want to grant consent to search, and if defendant cooperated and there was not a large amount of drugs or a "dead body" in the residence, he would try to keep defendant out of jail for the holidays;

8. At that point, defendant . . . told the officers to come inside and he would show them where everything was . . . .

Defendant does not contest the trial court's findings.

Based on the totality of the circumstances as set forth in these uncontested findings, we hold defendant's consent to the search of his residence was voluntary, "the product of an essentially free and unconstrained choice" and not the product of unlawful coercion. *See Schneckloth*, 412 U.S. at 225-26, 36 L. Ed. 2d at 862. Accordingly, defendant's assignment of error is overruled.

*II*

[2] Defendant next argues that the discovery of the drugs in his home was the "fruit of an unreasonable seizure" and that discovery of cocaine on his person while at the jail was likewise "fruit of his illegal detention." However, these issues were neither raised nor argued before the trial court. Accordingly, we dismiss defendant's contentions. *See* N.C. R. App. P. 10(b)(1) (2008) ("In order to preserve a

question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

Affirmed.

Judges McGEE and GEER concur.