STATE v. McMILLAN

[214 N.C. App. 320 (2011)]

---

STATE OF NORTH CAROLINA v. ANTHONY McMILLAN

No. COA10-1419

(Filed 2 August 2011)

**1. Indictment and Information—first-degree murder—short-form indictment proper**

The trial court did not err in a first-degree murder and robbery with a dangerous weapon case by refusing to dismiss the short-form first-degree murder indictment against defendant. The issue of short-form indictments has been repeatedly decided against defendants and the Court of Appeals was bound by this precedent.

**2. Homicide—first-degree murder—second-degree murder—sufficient evidence—motion to dismiss properly denied**

The trial court did not err in a murder case by denying defendant's motion to dismiss the charges of second-degree murder of one victim and first-degree felony murder of another. The State offered sufficient evidence to establish every element of these crimes.

**3. Homicide—first-degree murder—jury instruction—voluntary manslaughter—no evidence to support instruction**

The trial court erred in a first-degree murder case by refusing to charge the jury on the lesser-included offense of voluntary manslaughter as to each victim.

STATE v. McMILLAN

[214 N.C. App. 320 (2011)]

**4. Appeal and Error—preservation of issues—failure to raise constitutional issue at trial—no constitutional violation**

Defendant failed to preserve for appellate review his constitutional argument that the trial court erred in a first-degree murder case by allowing the State's expert forensic pathologist to testify about the autopsy of one of the victims and give her own opinion concerning the cause of death. Even if the issue had been preserved, the expert's testimony did not violate defendant's constitutional right of confrontation because the expert was actually present for the autopsy of the victim and testified as to her own independent opinion as to the cause of her death.

**5. Evidence—mouth swabbing—photographs—belt and shoes—defendant's consent—motion to suppress properly denied**

The trial court did not err in a first-degree murder and robbery with a dangerous weapon case by denying defendant's motion to suppress certain evidence. The findings of fact supported the conclusion of law that defendant freely and voluntarily consented to the swabbing of his mouth, the photographs of his injuries, and the collection of his belt and shoes.

Appeal by defendant from judgments entered 11 December 2009 by Judge Thomas H. Lock in Cumberland County Superior Court. Heard in the Court of Appeals 27 April 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Danielle Marquis Elder, for the State.*

*William D. Spence, for defendant-appellant.*

STEELMAN, Judge.

Evidence that defendant "had words" with one of the deceased was not sufficient to negate the malice supporting his conviction for second-degree murder, nor was it sufficient to require a jury instruction on voluntary manslaughter in the two murder cases. The temporal sequence of the taking and the use of a firearm did not negate defendant's conviction for armed robbery that was the basis of his first-degree felony murder conviction. Where constitutional arguments are not presented at trial, they are not preserved for appellate review. Where officers advised defendant that if he did not consent to giving oral swabs and surrendering certain items of clothing that they would detain him until they obtained a search warrant, this did not negate defendant's voluntary consent to the seizure of those items.

## I. Factual and Procedural Background

The evidence presented at trial tended to show the following: On the evening of 14 August 2006, defendant shot and killed Marcus Robinson (Robinson) and Tammyln Rosario (Rosario) at Robinson's car wash business in Stedman, North Carolina. Employees arriving for work the next morning at approximately 7:15 a.m. observed that the front glass door had been shattered and the first floor lobby was littered with small denomination currency. The glass door appeared to have been broken from the inside with the glass pushed outward. Robinson and his girlfriend, Rosario, were found dead, lying in pools of blood on the second floor. Robinson was found lying on the landing, while Rosario was found sitting upright, propped against a door, with a jacket fashioned as a tourniquet around her leg and a cell phone in her hand.

An autopsy revealed that Robinson sustained a non-life threatening blunt force injury to the back of his head, leaving a tear in his scalp, as well as two fatal gunshot wounds to his upper left chest and abdomen, both inflicted from one to three feet away. Rosario sustained gunshot wounds believed to have been inflicted by the same bullet entering and exiting her right thigh and then grazing her left leg. Rosario bled to death from the injury to her right femoral artery and vein. This wound would not have been fatal had timely medical assistance been rendered. A loaded silver Smith & Wesson .22 caliber revolver was collected from inside a safe, located in a room on the second floor, in front of which there was a pool of blood. An employee testified that cash from the car wash was frequently stored in the safe.

Investigators identified defendant after determining that the last number dialed from Rosario's cell phone before she called 911 was to defendant's cell phone. At 7:32 p.m. on 15 August 2006, defendant voluntarily presented himself at the law enforcement center. At that time, investigators noticed that defendant had fresh cuts on his hand and legs, and his shoes and belt appeared to have blood on them. Defendant, who was not under arrest, signed a consent form, voluntarily relinquishing his shoes and belt to investigators, and agreeing to have his injuries photographed and to provide a DNA sample from an oral swab.

Police later interviewed Maurice McMillan (McMillan), defendant's cousin, who testified that he received a phone call from defendant on the night of the shootings. Defendant asked to meet with McMillan, and they met at the home of McMillan's grandfather.

McMillan testified that both he and defendant sold drugs and that defendant claimed to have shot one of his customers that night. Defendant told McMillan that he had "messed up," that he had "made a mistake" and "shot some people." Defendant stated that he had been "smoking [marijuana] with the people" and that he and the "dude . . . had some words or something." Defendant told McMillan that the man bent over a safe and defendant saw a gun in the safe. He then shot the man with the gun from the safe, then shot a woman because he was scared.

McMillan also testified that defendant told him that he injured his hands on the door trying to break the glass to get out of the building. Defendant also claimed to have taken money, although McMillan denied ever seeing any of the stolen money. McMillan told defendant to take him to the place where the shooting had occurred. Defendant took him to a warehouse in Stedman. Defendant dropped McMillan off at the warehouse, but McMillan lost his nerve, did not enter the warehouse, and called defendant to pick him up. They returned to the residence of McMillan's grandfather, where defendant produced a gun from the trunk of his car. McMillan wiped down the gun and threw it into the Cape Fear River. Investigators later retrieved the gun. Defendant's fiancé testified that he did not return home until after midnight. She observed fresh cuts on his hands, which he advised he had sustained in a fight. She confirmed that defendant was selling drugs.

DNA analysis matched the DNA from a blood droplet located on the sidewalk outside of the car wash and from blood on the front glass door to defendant. Analysis of shell casings found on the second floor of the warehouse confirmed that they had been fired from the .357 Glock handgun retrieved from the Cape Fear River. The bullets retrieved from the wall behind Rosario's body and those retrieved from Robinson's body could not be definitively matched to the .357 Glock handgun.

Defendant was indicted on two counts of first-degree murder and two counts of robbery with a dangerous weapon as to Robinson and Rosario, respectively, on 29 January 2007. The State sought the death penalty for each murder charge. These cases were tried before Judge Lock at the 9 November 2009 session of Criminal Superior Court for Cumberland County. On 8 December 2009, the jury found defendant guilty of: (1) first-degree felony murder of Rosario; (2) second-degree murder of Robinson; and (3) robbery with a dangerous weapon as to Rosario. The jury found defendant not guilty of the robbery of

Robinson. On 11 December 2009, the jury unanimously recommended that defendant be sentenced to life in prison without parole for the murder of Rosario. Defendant was sentenced to life imprisonment without parole for the murder of Rosario and a consecutive term of 180 months minimum and 225 maximum for the murder of Robinson. The trial court arrested judgment as to the robbery conviction, since it constituted the basis for the first-degree felony murder conviction of Rosario.

Defendant appeals.

## II. Refusal to Dismiss Short Form Indictment

**[1]** In his first argument, defendant contends that the trial court erred in refusing to dismiss the "short form" first-degree murder indictment (counts I and II) against defendant.

The issue of "short form" indictments has been repeatedly decided against defendant. *See State v. Jacobs*, 195 N.C. App. 599, 610-11, 673 S.E.2d 724, 730-31 (2009), *aff'd*, 363 N.C. 815, 689 S.E.2d 859 (2010); *State v. Avery*, 315 N.C. 1, 12-14, 337 S.E.2d 786, 792-93 (1985). We are bound by this precedent. Defendant acknowledges that this argument is made for preservation purposes only.

This argument is without merit.

## III. Sufficiency of Evidence

**[2]** In his second and third arguments, defendant contends that the trial court erred in denying his motion to dismiss the charges of second-degree murder of Robinson and first-degree felony murder of Rosario because the State offered insufficient evidence to establish every element of these crimes. We disagree.

## A. Standard of Review

In order to survive a motion to dismiss based on the sufficiency of the evidence, the court must determine that there is substantial evidence of each essential element of the offense charged and that defendant is the perpetrator of such offense. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (quotation omitted). The court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences to be drawn from the evidence. *Fritsch*, 351 N.C. at 378-39, 526 S.E.2d at 455.

## B. Second-Degree Murder of Robinson

Defendant contends that the trial court erred in denying his motion to dismiss the charge of second-degree murder as to Robinson at the close of the State's evidence because the State's evidence was insufficient to establish every element of that crime. In particular, defendant contends that there was evidence of a heat of passion killing on sudden provocation, negating the presumption of malice allowed by the trial court because a deadly weapon was used. Defendant bases this argument solely on the evidence offered by McMillan's testimony, that "[defendant] was up there smoking reefer with the people and him and the dude . . . had some words or something . . . ," claiming this testimony offers evidence of a sudden quarrel and therefore a killing in the heat of passion.

Second-degree murder is the unlawful killing of another human being with malice, but without premeditation and deliberation. *State v. Phipps*, 331 N.C. 427, 457-58, 418 S.E.2d 178, 194 (1992). Malice is implied from a killing with a deadly weapon. *State v. McCoy*, 320 N.C. 581, 587, 359 S.E.2d 764, 768 (1987); *State v. Patterson*, 297 N.C. 247, 253, 254 S.E.2d 604, 609 (1979). "When the killing with a deadly weapon is admitted or established, two presumptions arise: (1) that the killing was unlawful; (2) that it was donè with malice; and an unlawful killing with malice is murder in the second degree." *State v. Gordon*, 241 N.C. 356, 358, 85 S.E.2d 322, 323 (1955). To give rise to these presumptions, it is not necessary to prove intent to kill; instead, it is sufficient if the weapon was used intentionally and proximately caused the resulting death. *Id.* at 358, 85 S.E.2d at 324. Evidence of self-defense or proof of adequate provocation can negate the presumption of malice. *McCoy*, 320 N.C. at 587, 359 S.E.2d at 768. Mere words are not sufficient provocation. *State v. McCray*, 312 N.C. 519, 534, 324 S.E.2d 606, 616 (1985) (holding that taunts from fellow prison inmates did "not constitute sufficient provocation to raise a 'sudden heat of passion' which can rob the crime of malice and reduce it to manslaughter.").

The State presented evidence at trial that defendant intentionally used a deadly weapon to inflict wounds upon Robinson, which were the proximate cause of his death. Defendant recounted these events to McMillan, stating that he "shot some people"—specifically that he shot the man after seeing a gun in the open safe. The State offered additional evidence that defendant had fresh cuts on his hands and legs the day after the shootings, and the DNA collected from blood found on the glass door and sidewalk in front of the glass matched

defendant's DNA. Analysis confirmed that the spent shell casings discovered on the second floor of the warehouse had been fired from the .357 Glock handgun retrieved from the Cape Fear River. This weapon was identified by McMillan as being given to him by defendant. Cell phone records confirmed a series of cell phone calls were made in the course of the evening, documenting McMillan's multiple trips to and from Stedman that night.

The State presented substantial evidence that defendant killed Robinson with a deadly weapon. Therefore, the jury was allowed to infer that the killing was unlawful and that it was done with malice. Defendant's statement, that he and the deceased "had words or something," did not provide evidence of provocation sufficient to negate the malice presumed from defendant's use of a deadly weapon. *See McCray*, 312 N.C. at 533, 324 S.E.2d at 616.

There was sufficient evidence presented for the charge of second-degree murder of Robinson to be submitted to the jury.

This argument is without merit.

## C. First-Degree Murder of Rosario

Defendant also contends that the trial court erred in denying his motion to dismiss the charge of first-degree murder of Rosario at the close of the State's evidence for insufficiency of the evidence. Defendant contends that the State failed to show beyond a reasonable doubt that defendant committed the crime of robbery with a dangerous weapon and that his conviction for first-degree felony murder must be set aside. Specifically, defendant contends that the evidence was insufficient to support defendant's conviction for armed robbery since the subject of the armed robbery, the .357 Glock handgun, was used in the commission of the murder and there was no evidence as to when in the course of events defendant took it. Defendant contends that he was not armed when he took the .357 Glock handgun. Instead, the very weapon he was convicted of stealing was identical to the instrument used to threaten or endanger the life of Rosario.

Felony murder is defined in N.C. Gen. Stat. § 14-17 and has two elements: (1) that the murder took place during the commission of (2) any of the felonies listed in the statute, including robbery with a deadly weapon. *State v. Bunch*, 363 N.C. 841, 846-47, 689 S.E.2d 866, 870 (2010). If the killing occurs during the perpetration of one of the listed felonies, it is first-degree murder even if the death was not intended. *State v. Abraham*, 338 N.C. 315, 330, 451 S.E.2d 131, 138 (1994).

Robbery with a dangerous weapon is the unlawful taking or attempt to take personal property from the person or in the presence of another, by use or threatened use of a firearm or other dangerous weapon, whereby the life of a person is endangered or threatened. N.C. Gen. Stat. § 14-87(a) (2009). Armed robbery is a continuous transaction such that "the temporal order of the threat or use of a dangerous weapon and the taking is immaterial." *State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (citation omitted). There is "no reason why the use of a weapon stolen from the victim cannot also be a part of the continuing transaction of the armed robbery." *State v. Maness*, 363 N.C. 261, 283-84, 677 S.E.2d 796, 810 (2009) (holding that it is permissible to convict for robbery with a dangerous weapon when the object taken is also the firearm used to perpetrate the offense), *cert. denied*, ___ U.S. ___, 176 L. Ed. 2d 568 (2010).

Under applicable North Carolina cases, the temporal sequence of events is not significant. The State's evidence indicated that defendant did not arrive at the car wash office with a weapon, but during the course of the evening obtained Rosario's .357 Glock handgun and used it to shoot both victims. He then fled with the weapon. The State produced sufficient evidence that defendant's taking and use of the weapon were part of a continuous transaction, such that it was proper to convict defendant of the armed robbery of the same instrument used to commit the robbery. Defendant possessed and used the weapon, and endangered the lives of other people with such weapon, while unlawfully taking personal property from another, thus establishing all of the requisite elements of armed robbery. The State presented sufficient evidence to establish that defendant shot and killed Rosario in the course of the robbery of Rosario's .357 Glock handgun.

This argument is without merit.

### IV. Denial of Defendant's Request to Charge the Jury on the Lesser Offense Voluntary Manslaughter

[3] In his fourth argument, defendant contends that the trial court erred in refusing to charge the jury on the lesser-included offense of voluntary manslaughter as to each victim. We disagree.

Voluntary manslaughter is distinguished from first and second-degree murder by the absence of malice. *State v. Wilkerson*, 295 N.C. 559, 577-78, 247 S.E.2d 905, 915 (1978). Malice is presumed from the use of a deadly weapon. *See Gordon*, 241 N.C. at 358, 85 S.E.2d at 323. Evidence of adequate provocation has to be present in order to rebut the presumption of malice. *State v. Owens*, 65 N.C. App. 107, 110, 308

S.E.2d 494, 497 (1983) ("The law requires a showing of strong provocation before it will grant a defendant who is charged with second-degree murder a jury instruction on the lesser-included offense of voluntary manslaughter. For example, mere insulting words do not constitute sufficient provocation." (citation omitted)). A defendant is entitled to a jury instruction on the lesser offense only if the evidence would permit the jury to find defendant guilty of the lesser-included offense. *State v. Conaway*, 339 N.C. 487, 514, 453 S.E.2d 824, 841 (citation omitted), *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). When the State has presented positive evidence of the greater charges and there is no real evidence negating those elements, an instruction on the lesser offense is not appropriate. *State v. Thibodeaux*, 352 N.C. 570, 582, 532 S.E.2d 797, 806 (2000), *cert. denied*, 531 U.S. 1155, 148 L. Ed. 2d 976 (2001).

In the instant case, malice was presumed by virtue of defendant's use of a deadly weapon. There was no positive evidence of adequate provocation that would have supported submission of voluntary manslaughter to the jury. The only evidence presented, that defendant and "the dude" were "having words or something," was insufficient provocation to negate malice. *McCray*, 312 N.C. at 533, 324 S.E.2d at 616; *Owens*, 65 N.C. App. at 110, 308 S.E.2d at 397. The trial court correctly denied defendant's request to charge the jury on the lesser-included offense of voluntary manslaughter.

This argument is without merit.

### V. Admission of Pathologist's Testimony

[4] In his fifth argument, defendant contends that the trial court committed plain error in allowing the State's expert forensic pathologist, Dr. Deborah Radisch, to testify about the autopsy of Rosario and give her own opinion concerning the cause of death in violation of his constitutional right of confrontation under the Sixth and Fourteenth Amendments to the United States Constitution. We disagree.

Constitutional error cannot be asserted for the first time on appeal, *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005), not even for plain error, *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578 ("plain error analysis applies only to instructions to the jury and evidentiary matters."), *cert denied*, 531 U.S. 1041, 148 L. Ed. 2d 543 (2000). Because defendant did not raise this constitutional issue at trial, he failed to preserve it for appellate review and it is waived. *Chapman*, 359 N.C. at 366, 611 S.E.2d at 822. We decline

defendant's invitation to apply Rule 2 of the Rules of Appellate Procedure to properly bring this issue before the Court.

Even assuming *arguendo* that this issue was properly preserved for appellate review, there was no error. The Confrontation Clause prohibits the introduction of testimony by an expert witness based solely upon the reports of a non-testifying analyst. *State v. Locklear*, 363 N.C. 438, 451-52, 681 S.E.2d 293, 304-05 (2009) (applying the analysis of the United States Supreme Court cases of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), and *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 174 L. Ed. 2d 314 (2009)).[1] However, because Dr. Radisch was actually present for the autopsy of Rosario and testified as to her own independent opinion as to the cause of her death, *Locklear* is not controlling in this case. Rather, the instant case is controlled by *State v. Blue*, ___ N.C. App. ___, 699 S.E.2d 661 (2010). In *Blue*, Dr. Trobbiani performed the autopsy, along with Dr. Butts. Dr. Trobbiani did not testify at trial. Dr. Butts testified based on his observations. This was held not to violate the strictures of *Crawford*. Defendant, Blue, had a full opportunity to confront and cross-examine Dr. Butts concerning his observations and opinions.

The instant case is virtually identical to *Blue*. Dr. Radisch was present during the autopsy of Rosario and testified to her own, independent conclusions as to the cause of death. Dr. Radisch was not simply recounting the findings of Dr. Gardner in that doctor's autopsy report. Defendant had a full opportunity to confront and cross-examine Dr. Radisch concerning her observations and opinions.

This analysis is consistent with the most recent Confrontation Clause case from the United States Supreme Court, *Bullcoming v. New Mexico*, ___ U.S. ___, 180 L. Ed. 2d 610 (2011). In that case, the defendant's conviction was reversed where the person who analyzed the defendant's blood sample did not testify, but his test results were admitted through another analyst who had no connection to the test. The Supreme Court held that the results of the testing were testimonial and therefore subject to the guarantees of the Confrontation Clause. Justice Sotomayor's concurring opinion made it clear that the case would have been different had the other analyst witnessed the test or rendered an independent opinion. *Bullcoming*, ___ U.S. ___, ___, 180 L. Ed. 2d 610, 629 (2011) (Sotomayor, J., concurring).

---

1. Although the Supreme Court held in *Locklear* that the admission of the expert testimony was in error, that defendant failed to show prejudice arising from the error.

The presence of both of these factors in the instant case distinguish it from *Bullcoming.*

This argument is without merit.

### VI. Voluntary Surrender of Physical Evidence

**[5]** In his sixth argument, defendant contends that the trial court erred in concluding as a matter of law that defendant freely and voluntarily consented to the swabbing of his mouth, the photographs of his injuries, and the collection of his belt and shoes, and therefore erred in denying his motion to suppress that evidence. We disagree.

### A. Standard of Review

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, ___ N.C. ___, ___, ___ S.E.2d ___, ___ (June 16, 2011) (No. 423A10). Findings of fact are presumed to be supported by competent evidence and are binding on appeal unless properly challenged. *State v. Jacobs*, 162 N.C. App. 251, 254, 590 S.E.2d 437, 440 (2004). A defendant must specify how the findings are inadequate and which findings are not supported by the evidence; a general contention that findings are not supported by evidence is insufficient for appellate review. *State v. Steen*, 352 N.C. 227, 238, 536 S.E.2d 1, 8 (2000), *cert. denied*, 531 U.S. 1167, 147 L. E. 2d 997 (2001). The trial court's conclusions of law are reviewable *de novo. Biber*, ___ N.C. at ___, ___ S.E.2d at ___.

### B. Analysis

Defendant contends that he did not freely and voluntarily give his consent for the evidence gathered during an interview at the Cumberland County Sheriff's Department, including an oral swab, photographs of his injuries, and collection of his belt and shoes. He specifically contends that his consent to the oral swab was the result of deceptive practices by the detectives, but acknowledges the photographs and the taking of his belt and shoes may have been proper.

Evidence obtained through voluntary consent without a search warrant is constitutionally permissible as long as the consent is given without coercion. *State v. Smith*, 346 N.C. 794, 799, 488 S.E.2d 210, 213 (1997). "[T]he question whether a consent to a search [is] in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all

STATE v. McMILLAN

[214 N.C. App. 320 (2011)]

the circumstances." *State v. Kuegel*, 195 N.C. App. 310, 315, 672 S.E.2d 97, 100 (2009) (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862-63 (1973)), *disc. review denied*, 363 N.C. 378, 679 S.E.2d 396 (2009). "As a general rule, it is not duress to threaten to do what one has a legal right to do. Nor is it duress to threaten to take any measure authorized by law and the circumstances of the case." *State v. Paschal*, 35 N.C. App. 239, 241, 241 S.E.2d 92, 94 (1978) (citation omitted); *see also State v. Sokolowski*, 344 N.C. 428, 433, 474 S.E.2d 333, 336 (1996) (holding no coercion where eight officers obtained consent after disarming defendant and asking to enter his house); *Kuegel*, 195 N.C. App. at 316, 672 S.E.2d at 101 (holding no coercion where the defendant was told that if he did not grant consent, the officers would get a search warrant). Invoking the right to silence and refusing to answer questions during an interrogation without counsel present does not invalidate a consensual search. *State v. Cummings*, 188 N.C. App. 598, 602-03, 656 S.E.2d 329, 332, *disc. review denied*, 362 N.C. 364, 661 S.E.2d 743 (2008).

In the instant case, defendant does not contend that the trial court's findings of fact are unsupported by the evidence, but rather contends that the findings of fact do not support the conclusions of law. The findings of fact indicate that defendant voluntarily went to the Sheriff's Department with his uncle. Detective Trotter informed defendant that "he was not under arrest" and that he was under "investigative detention." Defendant asserted "that he didn't want to do anything without a lawyer and he didn't want to talk with anyone[,]" but gave consent for the detective to collect an oral swab, take photographs of his injuries, and take into evidence certain items of clothing. It was permissible for the officers to inform defendant that he "could either consent . . . or the officers would detain him until they could prepare and execute a search warrant for the collection of those items." *See Paschal*, 35 N.C. App. at 241, 241 S.E.2d at 94. This conduct was not deceptive or unlawfully coercive. The officers truthfully represented that "the preparation and service of the search warrant might take four or five hours[,]" which they reasonably believed they had sufficient probable cause to obtain, given the fresh cuts on defendant's hands and legs, and blood spots on his shoes and belt. *See id.*

· We hold that the findings of fact support the trial court's conclusion of law that "[d]efendant freely and voluntarily consented to the swabbing of his mouth, the photographs of his injuries, and the collection of his belt and shoes." The officers obtained the evidence with defendant's consent.

This argument is without merit.

NO ERROR.

Judges STEPHENS and HUNTER, Jr., ROBERT N. concur.