ZACHARY, Judge.
 

 *610
 
 George Evans (defendant) appeals from the judgment entered upon his convictions for possession of drug paraphernalia and carrying a concealed weapon. On appeal, defendant argues that the trial court erred by denying his motions to dismiss the charges against him for violation
 
 *611
 
 of his constitutional right to a speedy trial, and to suppress evidence seized at the time of defendant's arrest. After careful consideration of defendant's arguments, in light of the record and the applicable law, we conclude that the trial court did not err and that defendant is not entitled to relief on the basis of these arguments.
 

 I. Factual and Procedural Background
 

 At approximately 4:00 a.m. on 9 March 2013, Jacksonville Police Officer Jason Griess was patrolling the area of U.S. 17 and Moosehart Avenue, an area that Officer Griess characterized as a "known drug corridor." As Officer Griess drove north on U.S. 17, he observed that a vehicle traveling south had come to a complete stop in the right-hand lane of travel. The vehicle "was stopped in the middle of the southbound travel lane in the outside travel lane," and was not at a stop sign or intersection. Defendant was later determined to be the driver of the car. Officer Griess then saw an unidentified pedestrian approach the passenger side of the car and lean in the window. Based on Officer Griess's observations that the vehicle had stopped in the roadway at 4:00 a.m., that a man then approached and leaned into the car and that these events occurred in an area known for drug activity, Officer Griess decided to conduct an investigatory traffic stop. When Officer Griess turned his patrol vehicle around and approached the car from behind, the vehicle started moving south again, and pulled into a parking lot. Officer Griess followed the car into the parking lot and alerted other officers as to his location.
 

 In the parking lot, Officer Griess got out of his patrol vehicle and approached defendant's car. As Officer Griess approached the car, he saw defendant open the door, duck his head down, and then straighten up. Defendant came around the side of the car, raised his arms, and told Officer Griess that he had gotten out of the car in order to pick up his cell phone from the floor of the car. Officer Griess ordered defendant to get back in the car. Several other law enforcement officers soon arrived, including Sergeant Chris Funke, who noticed that a glass pipe was lying directly behind the driver's side front tire. Officer Griess testified at trial that:
 

 It was a clear glass cylindrical pipe ... [with] dark residue on it and what I-I believe to be crack cocaine inside of it that was dark as well like it had been used recently. I also noted at the time it was unbroken. The location of it was directly behind the front driver's side.
 

 Based upon his training and experience, Officer Griess believed the pipe to be of the type used to smoke crack cocaine. The pipe was three
 
 *612
 
 or four inches directly behind the front tire and in a location where, if the pipe had been present in the parking lot before defendant entered, it would have been crushed when defendant's car drove over it. Sergeant Funke took possession of the pipe,
 
 *448
 
 and Officer Griess placed defendant under arrest for possession of drug paraphernalia and possession of cocaine. When Officer Griess searched defendant's car incident to this arrest, he discovered a pellet gun.
 

 On 9 March 2013, defendant was arrested and charged with possession of cocaine, possession of drug paraphernalia, and carrying a concealed weapon. Defendant was released on an unsecured bond the same day. In April, 2014, defendant was arrested and charged with felony assault. Defendant was unable to make bond and remained in jail awaiting trial on the charges associated with this serious assault and was still incarcerated on those charges when defendant was tried for the offenses at issue in this case. On 16 April 2014, the unsecured bond that had been set for the present charges was changed to a $2,500 secured bond. On 6 March 2015, defendant filed a motion for a speedy trial, and on 15 May 2015, the trial court modified the bond in this case to unsecured; however, defendant remained in jail on the assault charges. Defendant was indicted for the charges in the instant case on 15 April 2015.
 

 The charges against defendant came on for trial at the 5 January 2016 criminal session of Onslow County Superior Court. Prior to trial, the trial court conducted a hearing on defendant's motions to dismiss the charges against him for violation of his constitutional right to a speedy trial and to suppress items seized at the time of his arrest. The court denied both of these motions. On 8 January 2016, the jury returned verdicts finding defendant guilty of possession of drug paraphernalia and carrying a concealed weapon, but finding him not guilty of possession of cocaine. The trial court sentenced defendant to consecutive terms of imprisonment of 45 days each for the two offenses of which he was convicted. Because defendant was given credit for the 341 days that he was in jail prior to trial, he did not serve any additional time as a result of these convictions. Defendant gave notice of appeal in open court.
 

 II. Standard of Review
 

 Defendant has appealed from the trial court's orders on two pretrial motions that were heard by the court without a jury. "On appeal, the standard of review when the trial court sits without a jury is 'whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' " Barker v. Barker,
 
 228 N.C.App. 362
 
 , 364,
 
 745 S.E.2d 910
 
 , 912 (2013)
 

 *613
 
 (quoting
 
 Shear v. Stevens Bldg. Co
 
 .,
 
 107 N.C.App. 154
 
 , 160,
 
 418 S.E.2d 841
 
 , 845 (1992) ). "The well-established rule is that findings of fact made by the court in a non-jury trial have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support them, although the evidence might have supported findings to the contrary."
 
 Henderson County v. Osteen
 
 ,
 
 297 N.C. 113
 
 , 120,
 
 254 S.E.2d 160
 
 , 165 (1979) (citation omitted). "A trial court's unchallenged findings of fact are 'presumed to be supported by competent evidence and [are] binding on appeal.' " Hoover v. Hoover, --- N.C.App. ----, ----,
 
 788 S.E.2d 615
 
 , 616 (2016) (quoting Koufman v. Koufman,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ).
 

 In this case, defendant argues that the trial court erred by denying his motions to dismiss the charges against him for deprivation of his constitutional right to a speedy trial and to suppress the evidence seized at the time of his arrest on the grounds that the evidence was seized in violation of his rights under the Fourth Amendment to the United States Constitution. Thus, both of defendant's appellate arguments are based upon an assertion that his constitutional rights were violated. "An appellate court reviews conclusions of law pertaining to a constitutional matter
 
 de novo
 
 ."
 
 State v. Bowditch
 
 ,
 
 364 N.C. 335
 
 , 340,
 
 700 S.E.2d 1
 
 , 5 (2010) (citation omitted). " 'Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (quoting In re Greens of Pine Glen, Ltd. P'ship,
 
 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ).
 

 III. Speedy Trial Motion
 

 A. Introduction
 

 The Sixth Amendment to the United States Constitution states, in relevant part,
 
 *449
 
 that "in all criminal prosecutions the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI. "This provision is made applicable to the states by the Fourteenth Amendment."
 
 State v. Washington
 
 ,
 
 192 N.C.App. 277
 
 , 282,
 
 665 S.E.2d 799
 
 , 803 (2008) (citing
 
 Klopfer v. North Carolina
 
 ,
 
 386 U.S. 213
 
 , 222,
 
 87 S.Ct. 988
 
 , 993,
 
 18 L.Ed.2d 1
 
 , 8 (1967) ). The leading case on a criminal defendant's constitutional right to a speedy trial is
 
 Barker v. Wingo
 
 ,
 
 407 U.S. 514
 
 ,
 
 92 S.Ct. 2182
 
 ,
 
 33 L.Ed.2d 101
 
 (1972), in which the United States Supreme Court set out a framework for analyzing a defendant's assertion of a violation of the right to a speedy trial:
 

 A balancing test necessarily compels courts to approach speedy trial cases on an
 
 ad hoc
 
 basis. We can do little more than identify some of the factors which courts should
 
 *614
 
 assess in determining whether a particular defendant has been deprived of his right.... [W]e identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.
 

 Barker
 
 ,
 
 407 U.S. at 530
 
 ,
 
 92 S.Ct. at 2192
 
 ,
 
 33 L.Ed.2d at 116-117
 
 . "North Carolina courts have adopted these standards in analyzing alleged speedy trial violations."
 
 Washington
 
 ,
 
 192 N.C.App. at 282
 
 ,
 
 665 S.E.2d at
 
 803 (citing
 
 State v. Bare
 
 ,
 
 77 N.C.App. 516
 
 , 519,
 
 335 S.E.2d 748
 
 , 750 (1985) ).
 
 Barker
 
 also held that no single factor is determinative:
 

 We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.
 

 Barker
 
 at 533,
 
 92 S.Ct. at 2193
 
 ,
 
 33 L.Ed.2d at 118
 
 . We next consider the factors identified in
 
 Barker
 
 in the context of the facts of this case.
 

 B.
 
 Barker
 
 Factors
 

 1. Length of Delay
 

 In analyzing a defendant's claim of deprivation of the right to a speedy trial, "[w]e must first determine the relevant period of delay. 'A defendant's right to a speedy trial attaches upon being formally accused of criminal activity, by arrest or indictment.' The period relevant to speedy trial analysis ends upon trial."
 
 State v. Friend
 
 ,
 
 219 N.C.App. 338
 
 , 343,
 
 724 S.E.2d 85
 
 , 90 (2012) (quoting
 
 State v. Hammonds
 
 ,
 
 141 N.C.App. 152
 
 , 159,
 
 541 S.E.2d 166
 
 , 172 (2000) ). In this case, defendant was arrested on 9 March 2013 and tried beginning on 5 January 2016, a period of delay of two years and ten months.
 

 "[S]ome delay is inherent and must be tolerated in any criminal trial[;] for example, the state is entitled to an adequate period in which to prepare its case for trial[.]"
 
 State v. Pippin
 
 ,
 
 72 N.C.App. 387
 
 , 391-92,
 
 324 S.E.2d 900
 
 , 904 (1985) (citations omitted). "Consequently, 'the length of a delay is not determinative of whether a violation has occurred.' "
 
 Hammonds
 
 ,
 
 141 N.C.App. at 159
 
 ,
 
 541 S.E.2d at 172
 
 (quoting
 
 Bare
 
 ,
 
 77 N.C.App. at 519
 
 ,
 
 335 S.E.2d at
 
 750 ). Thus:
 

 "[T]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is
 
 *615
 
 presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." ... Because the length of delay is viewed as a triggering mechanism for the speedy trial issue, "its significance in the balance is not great."
 

 Id
 
 . (quoting
 
 Barker
 
 at 530-31,
 
 92 S.Ct. at 2192
 
 ,
 
 33 L.Ed.2d at 117
 
 , and
 
 State v. Hill
 
 ,
 
 287 N.C. 207
 
 , 211,
 
 214 S.E.2d 67
 
 , 71 (1975) ).
 

 In this case, defendant asserts that the delay of almost three years between his arrest and the trial on the present charges was long enough to trigger our examination of the other three factors set out in
 
 Barker
 
 . The State argues that the delay was not unreasonable but concedes that the length of the delay may be "a triggering mechanism[.]" We conclude that the length of delay in this case was extensive enough to trigger our consideration of the other
 
 Barker
 
 factors.
 

 2. Reason for Delay
 

 Preliminarily, we address the proper burden of proof regarding the production
 
 *450
 
 of evidence as to the reason for the delay of a defendant's trial. In
 
 State v. Spivey
 
 ,
 
 357 N.C. 114
 
 ,
 
 579 S.E.2d 251
 
 (2003), the defendant argued that the four and a half year delay between his arrest and trial violated his right to a speedy trial. Our Supreme Court agreed that "the length of delay was approximately four and one-half years, which is clearly enough to trigger examination of the other factors."
 
 Spivey
 
 ,
 
 357 N.C. at 119
 
 ,
 
 579 S.E.2d at 255
 
 . The Court then addressed the defendant's duty to produce evidence as to the cause of the delay:
 

 [The] defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution. Only after the defendant has carried his burden of proof by offering
 
 prima facie
 
 evidence showing that the delay was caused by the
 
 neglect or willfulness
 
 of the prosecution must the State offer evidence fully explaining the reasons for the delay and sufficient to rebut the
 
 prima facie
 
 evidence. This Court has stated:
 

 "The constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case. ... Neither a defendant nor the State can be protected from prejudice which is an incident of ordinary or reasonably necessary delay. The proscription is against
 
 *616
 
 purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort."
 

 Spivey
 
 at 119,
 
 579 S.E.2d at 255
 
 (emphasis in original) (quoting
 
 State v. Johnson
 
 ,
 
 275 N.C. 264
 
 , 273,
 
 167 S.E.2d 274
 
 , 280 (1969) (other citations omitted)). We conclude that upon a defendant's production of evidence that his trial was delayed for a length of time sufficient to trigger review of the other
 
 Barker
 
 factors, the defendant then has the burden of producing evidence establishing a
 
 prima facie
 
 case that the delay resulted from the neglect or willfulness of the State. At that point, the burden shifts to the State to rebut the defendant's evidence.
 

 On appeal, defendant proposes a different burden of proof, and argues that the trial court "erred in applying the
 
 Barker
 
 analysis, because it failed to hold the prosecution to its burden of justifying the delay once [the defendant] made a
 
 prima facie
 
 showing of unreasonable delay." Defendant contends that when a defendant shows that the length of delay is sufficient to trigger review of the other
 
 Barker
 
 factors, the burden of proof then shifts to the State to explain the cause of the delay,
 
 without
 
 requiring the defendant to make an initial proffer of evidence indicating that the delay was caused by the willful acts or negligence of the State. We disagree.
 

 Defendant's position is supported solely by his reference to an excerpt from a sentence in
 
 Pippin
 
 , in which this Court stated that on the facts of that case, the Court "agree[d] with the implicit finding of the trial court that a delay of fourteen months in bringing defendant to trial was
 
 prima facie
 
 unreasonable and required the district attorney to fully justify the delay."
 
 Pippin
 
 ,
 
 72 N.C.App. at 392
 
 ,
 
 324 S.E.2d at 904
 
 . Defendant appears to contend that the use of the phrase "
 
 prima facie
 
 unreasonable" in this excerpt has the effect of placing the burden upon the State to "fully justify" any pretrial delay that is lengthy enough to warrant review of the factors discussed in
 
 Barker
 
 . However, review of the entire
 
 Pippin
 
 opinion makes it clear that defendant's interpretation of that case is not correct. In
 
 Pippin
 
 , this Court stated that:
 

 Defendant has the initial burden of showing,
 
 prima facie
 
 , that the delay was caused by the willful acts or neglect of the prosecuting authority, and,
 
 if this burden is met
 
 , the State must "offer evidence fully explaining the reasons for the delay and sufficient to rebut the
 
 prima facie
 
 showing or risk dismissal."
 

 Pippin
 
 ,
 
 72 N.C.App. at 391
 
 ,
 
 324 S.E.2d at 904
 
 (emphasis added) (quoting
 
 State v. McKoy
 
 ,
 
 294 N.C. 134
 
 , 143,
 
 240 S.E.2d 383
 
 , 390 (1978) ). Upon
 
 *617
 
 review of the facts of the case and the factors identified in
 
 Barker
 
 , we held that:
 

 In balancing the four
 
 Barker
 
 factors, we find that defendant had presented a
 
 prima facie
 
 case that the district attorney's delay in bringing him to trial for approximately fourteen months
 
 was caused, in significant part, by the negligence of the district attorney
 
 in securing an indictment under
 
 *451
 
 which defendant could be properly tried.... Once the defendant presented a
 
 prima facie
 
 case that substantial delay was the result of the district attorney's negligence, the burden of proof shifted to the state to fully explain and justify the reasons for the delay.
 

 Pippin
 
 at 398,
 
 324 S.E.2d at 907-908
 
 (emphasis added). We conclude that
 
 Pippin
 
 does not support defendant's position on the burden of proof in a case raising a speedy trial claim.
 

 In the present case, defendant does not argue that he presented evidence that the delay of his trial was the result of the willful actions or negligence of the State. Defendant instead relies upon his contention, which we have rejected, that the State had the initial burden of producing evidence to justify the delay. We also observe that the uncontradicted record evidence established that (1) between the time of defendant's arrest and his trial, he was represented by five different attorneys, each of whom needed time to become familiar with the case, and that (2) although the prosecutor submitted the glass pipe to the State Crime Lab within a few days of defendant's arrest, the lab did not return the pipe and test results to the State until 22 July 2015. We conclude that defendant has failed to make a persuasive argument regarding the reason for the delay.
 

 3. Defendant's Assertion of Right
 

 In
 
 Barker
 
 , the United States Supreme Court held that although a defendant's failure to assert his right to a speedy trial would not constitute a waiver, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."
 
 Barker
 
 at 532,
 
 92 S.Ct. at 2193
 
 ,
 
 33 L.Ed.2d at 118
 
 . In this case, defendant asserted his right to a speedy trial in a timely
 
 pro se
 
 motion, which was later adopted by his counsel.
 

 4. Prejudice
 

 Regarding the prejudice arising from a violation of a defendant's right to a speedy trial,
 
 Barker
 
 held that:
 

 *618
 
 Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.
 

 Barker
 
 ,
 
 407 U.S. at 532
 
 ,
 
 92 S.Ct. at 2193
 
 ,
 
 33 L.Ed.2d at 118
 
 .
 

 At the hearing on defendant's speedy trial motion, the trial court asked defendant's counsel to articulate the prejudice that defendant had suffered as a result of the delay in his trial. After consulting with defendant, his counsel stated that defendant was prejudiced by being jailed for almost a year on relatively minor charges and that the delay "allowed the State through its witnesses to formulate a concerted plan on how to respond to these allegations.... In other words, they were-it gave them time to get their stories all together so they would be consistent." In addition, defendant testified at the hearing that he was prejudiced by the delay in his trial because, in his opinion, the delay allowed the State's witnesses to coordinate and to fabricate their testimony. The following excerpt is representative of defendant's testimony on this issue:
 

 DEFENDANT: [i]f we had went to trial when we was supposed to have went to trial, none of this would have come about with them giving them adequate time to make changes and lie about the story concerning the crack pipe and the other charge because I was stopped twice within one week. And that gave them ample time to coordinate, because it was the same officer who stopped me the first time. Seven days later, they stopped me again. And every time that they stopped me, it was always a lie that they used as an excuse to obtain searching my vehicle.
 

 Neither defendant's testimony nor the statement of his counsel was supported by other evidence. On appeal, defendant concedes that the trial court did not find his testimony credible, but argues that the trial court failed to give adequate consideration to the prejudice that is inherent in pretrial incarceration. Defendant fails to acknowledge that, during the time that he was incarcerated
 
 *452
 
 on the present charges, he was also incarcerated on unrelated felony charges. "Although a convict in the penitentiary is entitled to the constitutional protection of a speedy trial,
 
 *619
 
 in determining the effect of the length of delay in trial, it must be noted that such a person is not deprived of the freedom an acquittal would bring to a person being held in jail only for the purpose of awaiting trial."
 
 State v. Wright
 
 ,
 
 28 N.C.App. 426
 
 , 430,
 
 221 S.E.2d 751
 
 , 754,
 
 aff'd
 
 ,
 
 290 N.C. 45
 
 ,
 
 224 S.E.2d 624
 
 (1976). In this case, defendant remained in jail on unrelated charges even after his bond was reduced to unsecured, and he does not allege that he suffered anxiety or prejudice specifically related to these charges. We conclude that the only prejudice that defendant has identified is the prejudice that is an essential attribute of any period of incarceration.
 

 C. Discussion
 

 As discussed above, the "four interrelated factors [identified in
 
 Barker
 
 ] must be considered and balanced in deciding whether a defendant's Sixth Amendment right to a speedy trial has been violated."
 
 State v. Pickens
 
 ,
 
 346 N.C. 628
 
 , 649,
 
 488 S.E.2d 162
 
 , 174 (1997). In the present case, the trial court made the following findings of fact in its order denying defendant's motion to dismiss the charges against him for violation of his right to a speedy trial:
 

 1. The Defendant was arrested on March 9, 2013 by the Jacksonville Police Department and charged with the offenses listed in the indictment in the above file number.
 

 2. It has been approximately 2 years and 9 months from the date of the Defendant's arrest until the current term of Court in which the Defendant's case was called for trial.
 

 3. The controlled substances seized from the Defendant at the time of his arrest were submitted to the State Crime Laboratory for analysis on or about March 15, 2013.
 

 4. The reports and conclusions of the Crime Lab and their analysis were not completed until about July 22, 2015.
 

 5. The Defendant has had five lawyers appointed to represent him during the pendency of this action; some lawyers withdrew because of conflicts, others at the request of the defendant.
 

 6. The Defendant asserted his right to speedy trial by filing a motion to that effect on or about March 9, 2015....
 

 7. It has been approximately 10 months from the time the defendant asserted his right to a speedy trial until the case was called for trial[.] ...
 

 *620
 
 8. On March 29, 2014, the defendant was arrested and charged with an unrelated felony assault and attempted murder in Onslow County file numbers 14 CRS 52041; 52042; 52052; 52011; 1110 and has remained in pretrial incarceration for those offenses pending resolution of those offenses.
 

 9. The Defendant has pending offenses in Columbus County for offenses related to the assault and attempted murder.
 

 10. According to the court file and records maintained by the Clerk of Court, the Defendant has approximately 341 days pretrial credit to be applied to this case number.
 

 11. The Defendant's original bond was set at $2,500 which was not an unreasonable bond for these offenses.
 

 12. There has been no evidence presented to the Court of any purposeful impermissible or intentional delay which the prosecution could have avoided by reasonable effort. The defendant has failed to present any evidence that the delay was caused by the State's negligence or willfulness, and there is no indication that the Court's resources were either negligently or purposefully underutilized.
 

 13. There is no credible evidence other than the defendant's personal opinion that the delay allowed officers of the Jacksonville Police Department to collude with each other as to the events of the night in question pertaining to the defendant's arrest for these offenses.
 

 14. There is no credible evidence presented to the Court that the delay prejudiced the defendant or that the defendant's defense was impaired in any way by the delay.
 

 *453
 
 On the basis of its findings, the trial court concluded that:
 

 Based upon the above findings of fact, the Court concludes as a matter of law that none of the defendant's rights to a speedy trial under the North Carolina General Statutes, North Carolina Constitution or the United States Constitution have been violated.
 

 We conclude that the trial court's order reflects an appropriate consideration of the factors articulated in
 
 Barker
 
 . On appeal, defendant
 
 *621
 
 does not challenge the evidentiary support for any of the trial court's findings, or argue that the court's findings do not support its conclusion of law. "It is not the role of the appellate courts ... to create an appeal for an appellant," as doing so would leave "an appellee ... without notice of the basis upon which an appellate court might rule."
 
 Viar v. N.C. Dep't of Transp
 
 .,
 
 359 N.C. 400
 
 , 402,
 
 610 S.E.2d 360
 
 , 361 (2005) (
 
 per curiam
 
 ) (citation omitted). We conclude that defendant has failed to demonstrate that the trial court erred by denying his motion to dismiss the charges against him for violation of his right to a speedy trial, and that accordingly the trial court's order should be affirmed.
 

 IV. Suppression Motion
 

 Defendant argues next that the trial court erred by denying his motion to suppress the evidence seized at the time of his arrest, on the grounds that "the trial court applied the incorrect probable cause standard, rather than reasonable suspicion, to analyze the evidence," and that the trial court's findings of fact were insufficient to show that the decision to stop defendant was based upon reasonable suspicion. We conclude that this argument lacks merit.
 

 "Both the United States and North Carolina Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV ; N.C. Const. art. I, § 20. Although potentially brief and limited in scope, a traffic stop is considered a 'seizure' within the meaning of these provisions."
 
 State v. Otto
 
 ,
 
 366 N.C. 134
 
 , 136-37,
 
 726 S.E.2d 824
 
 , 827 (2012) (citation omitted). "Traffic stops have been historically reviewed under the investigatory detention framework first articulated in
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 [
 
 88 S.Ct. 1868
 
 ],
 
 20 L.Ed.2d 889
 
 (1968)."
 
 State v. Styles
 
 ,
 
 362 N.C. 412
 
 , 414,
 
 665 S.E.2d 438
 
 , 439 (2008) (internal quotation omitted). "Under
 
 Terry
 
 and subsequent cases, a traffic stop is permitted if the officer has a 'reasonable, articulable suspicion that criminal activity is afoot.' "
 
 Id
 
 . (quoting
 
 Illinois v. Wardlow
 
 ,
 
 528 U.S. 119
 
 , 123,
 
 120 S.Ct. 673
 
 , 675,
 
 145 L.Ed.2d 570
 
 , 576 (2000) ).
 

 "An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' "
 
 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 441,
 
 446 S.E.2d 67
 
 , 70 (1994) (quoting
 
 Brown v. Texas
 
 ,
 
 443 U.S. 47
 
 , 51,
 
 99 S.Ct. 2637
 
 , 2641,
 
 61 L.Ed.2d 357
 
 , 362 (1979) ). When determining whether an investigatory stop was based upon reasonable suspicion of criminal activity:
 

 A court must consider "the totality of the circumstances-the whole picture" in determining whether a reasonable suspicion to make an investigatory stop exists. The stop
 
 *622
 
 must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."
 

 Watkins
 
 ,
 
 337 N.C. at 441-42
 
 ,
 
 446 S.E.2d at 70
 
 (quoting
 
 U.S. v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 417,
 
 101 S.Ct. 690
 
 , 695,
 
 66 L.Ed.2d 621
 
 , 629 (1981), and
 
 U.S. v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 7,
 
 109 S.Ct. 1581
 
 , 1585,
 
 104 L.Ed.2d 1
 
 , 10 (1989) (other citation omitted)).
 

 An appellate court's review of an order ruling on a defendant's motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) (citations omitted). "However, when, as here, the trial court's findings of fact are not challenged on
 
 *454
 
 appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed
 
 de novo
 
 and are subject to full review."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011) (citation omitted).
 

 In the present case, the uncontradicted evidence showed that Officer Griess was patrolling an area that he described as a "known drug corridor" at 4:00 a.m., when he observed defendant's car stop in the lane of traffic, whereupon an unidentified pedestrian approached defendant's car and leaned in the window. Officer Griess testified that "all [of] these actions are indicative to me of a drug transaction" and that, based upon this set of circumstances he decided to "pull up behind the vehicle and conduct a traffic stop." Officer Griess testified that his "primary concern was the drug activity because of the possible hand-to-hand transaction [he had] observed." We conclude that Officer Griess's observations, coupled with reasonable inferences from those observations, gave Officer Griess the requisite reasonable suspicion of criminal activity required for him to conduct a brief investigatory traffic stop, based on the facts that (1) defendant stopped his vehicle in a lane of traffic on the roadway; (2) after he stopped his car, an unknown pedestrian approached the car and leaned in the window; and (3) this incident occurred at 4:00 a.m. in an area known to Officer Griess to be a location where drug sales frequently took place.
 

 *623
 
 In its order denying defendant's suppression motion, the trial court's findings of fact included the following;
 

 ...
 

 2: The Court is in a position to adjudge the credibility of the witnesses.
 

 3: On March the 9th, 2013, at approximately 4:12 a.m., Jacksonville Police Officer Jason Griess on routine patrol was traveling north on US Highway 17 [and observed] ... a vehicle coming toward the officer who was going 45 miles per hour, and this was in the vicinity of Moosehart Avenue and Route 17 in Jacksonville, which is a large business corridor and, also, a noted drug corridor in the city. The officer noticed that the vehicle, who was traveling in the opposite direction, came to a stop on the outside lane, which is the lane closest to the businesses of Route 17 at this location. This is a five-lane highway, two lanes in each direction with a turn lane in the middle. There were other vehicles going south in the same direction of the noted vehicle and traffic was light....
 

 4: The officer noticed that the vehicle came to a complete stop on the outside lane and an individual, a male, approached the vehicle on the passenger's side and was leaning into the vehicle. The officer, who was alone in his patrol car, performed a U-turn and turned on his blue light[.] ...
 

 5: The officer did the U-turn and was making the stop because of a violation done in his presence of either a state or city statute. The state statute is [N.C. Gen. Stat. §] 20-141(h) which states no person shall operate a motor vehicle on the highway at such a slow speed as to impede the normal and reasonable movement of traffic....
 

 6: The officer observed the traffic violations before he turned his blue light on. The officer also observed suspicious activity in the drug corridor by the car stopping on the road and a male approaching and leaning into the car.
 

 7: After the blue light was on, the vehicle quickly made two right turns [into a] ... parking lot[.] ... The officer pulled up behind the vehicle at a 90-degree angle[.] ...
 

 *624
 
 8: The officer called in his location, and got out of the car. As he was approaching the vehicle, the officer noticed the top front door began to open[.] ... A male head popped out and an individual identified as the defendant walked to the officer, who told the defendant to get back in the car. The defendant made a statement, "I was just getting out to pick up my cell phone from the floor." At that time, the officer called for additional backup[,] ... [and] stayed next to the car ... watching the defendant until the backup arrived.
 

 9: In approximately one minute the backup arrived; Officer Colvell, Officer Ehrler and Officer Funke....
 

 *455
 
 10: Officer Griess brought the other officers up to date on what happened before their arrival, and Officer Funke found a glass pipe that is typically used for smoking cocaine three to four inches behind the front driver's tire in a position [where it] was highly unlikely that the pipe would not have been crushed if it was in that position before the Defendant parked his car.
 

 11: The pipe on the ground was picked up and put into an evidence bag. Officer Griess searched the vehicle and he found a pellet gun wrapped in a ski mask in a pocket on the back of [the] driver's passenger seat readily accessible to the defendant.
 

 12: The glass smoking pipe on the ground is similar to pipes used to smoke cocaine. The Defendant was placed under arrest for possession [of] drug paraphernalia, possession of cocaine, and carrying a concealed weapon. The pipe, ski mask and pellet gun were seized and taken to the evidence room of the Jacksonville Police Department.... The defendant was not given a citation for violating the North Carolina State Statute 20-141(h) or the Jacksonville City Statute 0125-1113, because the emphasis of the police investigation was on the drug charges.
 

 ...
 

 Based upon its findings of fact, the trial court concluded that:
 

 1: If an officer has probable cause to believe that an individual has committed even a very minor criminal offense
 
 *625
 
 in his presence, he may without violating the Fourth Amendment arrest the offender.
 

 2: An officer has probable cause for arrest when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person or one of reasonable caution in believing in the circumstances shown that the suspect has committed an offense.
 

 3: Observing a traffic violation provides sufficient justification for a police officer to detain the offender vehicle for as long as it takes to perform the judicial incidence of a routine traffic stop.
 

 4: Officer Griess had probable cause to believe that a traffic violation occurred in his presence and was justified in stopping the Defendant's vehicle.
 

 5: The officers were justified in searching in the area of the vehicle, and after finding the crack pipe, had lawful grounds to search the vehicle even without the defendant's consent.
 

 6: The traffic stop, arrest of the defendant, and search of the [defendant's] vehicle satisfied the constitutional requirements set forth in the U.S. Constitution, the North Carolina Constitution and the North Carolina General Statutes.
 

 In the heading to defendant's appellate argument regarding the denial of his suppression motion, defendant asserts that "there was no reasonable suspicion sufficient to justify stopping [defendant]." However, defendant does not set forth any legal argument or citation to authority to support this contention, which is therefore deemed abandoned.
 
 See
 
 N.C. R. App. P. Rule 28(a) (2015) ("Issues not presented and discussed in a party's brief are deemed abandoned."). Defendant's appellate brief instead focuses upon the fact that the trial court applied a probable cause standard, rather than reasonable suspicion, to the question of whether the brief investigative seizure of defendant violated his rights under the Fourth Amendment. Defendant correctly asserts that the proper standard for determining the constitutionality of a traffic stop is reasonable suspicion. However, defendant fails to acknowledge that probable cause is a more stringent standard than reasonable suspicion and that, as a result, the trial court's error tended to benefit defendant.
 

 *626
 
 Moreover, "there is sound authority to the effect that where the court below has reached the correct result, the judgment may be affirmed even though the theory on which the result is bottomed is erroneous."
 
 Dobias v. White
 
 ,
 
 240 N.C. 680
 
 , 688,
 
 83 S.E.2d 785
 
 , 790 (1954). "If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered."
 
 Shore v. Brown
 
 ,
 
 324 N.C. 427
 
 , 428,
 
 378 S.E.2d 778
 
 , 779 (1989) (citations omitted).
 

 *456
 
 We conclude that the undisputed facts and circumstances known to Officer Griess support the conclusion that the law enforcement officer had the requisite reasonable suspicion to justify a traffic stop of defendant's car, and that the trial court's findings of fact support this conclusion as well. As discussed above, defendant has not offered any appellate argument challenging the evidentiary basis for a conclusion that reasonable suspicion existed. Defendant asserts that the court's findings of fact are insufficient to establish reasonable suspicion, and cites
 
 State v. Murray
 
 ,
 
 192 N.C.App. 684
 
 ,
 
 666 S.E.2d 205
 
 (2008). In
 
 Murray
 
 , however, the law enforcement officer who stopped the defendant admitted that he had not observed the defendant violate any traffic laws, and that the officer had "no reason to believe" that the defendant was engaged in any illegal activity.
 
 Murray
 
 , 192 N.C.App. at 688,
 
 666 S.E.2d at 208
 
 . In the present case, Officer Griess observed defendant stop his vehicle in a lane of travel of a busy highway, which is both a violation of traffic regulations and a safety hazard. The officer also saw a pedestrian approach defendant's car and lean in the window and, as previously discussed, these events occurred at 4:00 a.m. in an area known for illegal drug sales. We conclude that
 
 Murray
 
 is factually distinguishable from the present case and does not require reversal of the trial court's denial of defendant's suppression motion.
 

 For the reasons discussed above, we conclude that the trial court did not err by denying defendant's motion to dismiss the charges against him for violation of his right to a speedy trial, or by denying his motion to suppress the evidence seized at the time of his arrest. Given that defendant has raised no other challenges to his convictions, we conclude that defendant had a fair trial, free of reversible error.
 

 NO ERROR.
 

 Judges CALABRIA and INMAN concur.