IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-300

Filed: 5 November 2019

Wake County, No. 17 CVS 11899

NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Plaintiff,

v.

WEATHERSFIELD MANAGEMENT, LLC, f/k/a ACCUFORCE STAFFING SERVICES, LLC, f/k/a ACCUFORCE SMART SOLUTIONS, LLC, Defendant.

Appeal by defendant from order entered 4 January 2019 by Judge G. Bryan Collins, Jr. in Wake County Superior Court. Heard in the Court of Appeals 15 October 2019.

*Nelson Mullins Riley & Scarborough LLP, by Christopher J. Blake and Joseph W. Eason, for plaintiff-appellee.*

*Hunter, Smith & Davis, LLP, by Rachel Ralston Mancl, for defendant-appellant.*

TYSON, Judge.

Weathersfield Management, LLC, f/k/a Accuforce Staffing Services, LLC, f/k/a Accuforce Smart Solutions, LLC ("Defendant") appeals an order granting summary judgment for the North Carolina Insurance Guaranty Association ("Plaintiff"). We affirm.

I. Background

Defendant is a regional worker staffing company with less than $50,000,000.00 in market value. Defendant experienced severe financial problems to the extent it was forced to file for bankruptcy protection under Chapter 13 of the U.S. Bankruptcy Code.

North Carolina employers, who employ above a threshold number of employees, are statutorily required to maintain workers' compensation insurance coverage. Defendant's bankruptcy filing made it difficult to obtain coverage to meet this statutory requirement. Dallas National quoted coverage for Defendant, which required a deductible of $800,000.00 per occurrence, but included a duty to defend the insured. Defendant was unable to find another insurance carrier and accepted the policy from Dallas National to meet North Carolina's workers' compensation insurance coverage requirement beginning 18 August 2009.

This policy also required Defendant to maintain a collateral deposit of $600,000.00. Defendant claims this collateral deposit has not been returned. At some point during Defendant's period of coverage, Dallas National ceased conducting business as Dallas National and began using Freestone as its name.

In June 2012, Defendant's employee, Tina Huffman ("Ms. Huffman"), asserted a workplace injury and filed a workers' compensation claim. Freestone acknowledged in a Form 60 filing to the North Carolina Industrial Commission ("Commission"): (1) coverage under Defendant's policy; (2) that Ms. Huffman was an employee of

Defendant; and, (3) Ms. Huffman was injured during the course and scope of her employment. The Commission determined Ms. Huffman was entitled to weekly disability benefits totaling $165.40 and Ms. Huffman's attorney was awarded $55.14 per week.

In 2014, Plaintiff's involvement with Defendant's policy was activated due to the insolvency of Freestone. Plaintiff retained counsel to defend Defendant during the pendency of Ms. Huffman's claim. Plaintiff pursued settling Ms. Huffman's claim and a determination from the Commission of whether she can return to work. Ms. Huffman's counsel maintains that she "is completely disabled and unable to return to work." As of 10 August 2018, Plaintiff has paid $134,002.93 in indemnity and expense payments on Ms. Huffman's claim.

On 28 September 2017 Plaintiff commenced this action for reimbursement under N.C. Gen. Stat. § 58-48-1 for payment of Ms. Huffman's claims asserted under coverage for Defendant's policy with Freestone. Following written discovery, Plaintiff moved for summary judgment. The trial court heard and granted Plaintiff's motion for summary judgment. Defendant appeals.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).

## III. Issues

N.C. Ins. Guar. Ass'n v. Weathersfield mgmt., LLC.

*Opinion of the Court*

Defendant argues the trial court erred by granting summary judgment for Plaintiff under N.C. Gen. Stat. § 58-48-35 (2017) and asserts: (1) Defendant does not have a self-insured retention; (2) Defendant is not a high-net-worth employer or affiliate; (3) estoppel bars the claim; and, (4) genuine issues of material fact remain undecided.

## IV. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

## V. Analysis

### A. Self-Insured Retention

Defendant argues Plaintiff has no claim under N.C. Gen. Stat. § 58-48-35 because Defendant's policy does not contain a self-insured retention. We disagree.

N.C. Gen. Stat. § 58-48-35, articulates Plaintiff's statutory authority:

(a) The Association Shall:

(1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within 30 days of the

N.C. Ins. Guar. Ass'n v. Weathersfield Mgmt., LLC.

*Opinion of the Court*

determination. This obligation includes only the amount of each covered claim that is in excess of fifty dollars ($50.00) and is less than three hundred thousand dollars ($300,000). However, the Association shall pay the full amount of a covered claim for benefits under a workers' compensation insurance coverage, and shall pay an amount not exceeding ten thousand dollars ($10,000) per policy for a covered claim for the return of unearned premium. The Association has no obligation to pay a claimant's covered claim, except a claimant's workers' compensation claim if:

a. The insured had primary coverage at the time of the loss with a solvent insurer equal to or in excess of three hundred thousand dollars ($300,000) and is applicable to the claimant's loss; or

b. The insured's coverage is written subject to *a self-insured retention* equal to or in excess of three hundred thousand dollars ($300,000).

If the primary coverage *or the self-insured retention* is less than three hundred thousand dollars ($300,000), the Association's obligation to the claimant is reduced by the coverage and the retention. The Association shall pay the full amount of a covered claim for benefits under a workers' compensation insurance coverage to a claimant notwithstanding *any self-insured retention*, but the Association has the right to recover the amount of the *self-insured retention* from the employer.

In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises. Notwithstanding any other provision of this Article, a covered claim shall not include any claim filed with the Association after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer.

> (2) *Be deemed the insurer to the extent of the Association's obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer had not become insolvent.* However, the Association has the right but not the obligation to defend the insured who is not a resident of this State at the time of the insured event unless the property from which the claim arises is permanently located in this State in which instance the Association does not have the obligation to defend the matter in accordance with policy.

N.C. Gen. Stat. § 58-48-35 (emphasis supplied).

The highlighted provisions in the statute refer to a "self-insured retention." Defendants argue the statute is inapplicable to them because their policy had a deductible. N.C. Gen. Stat. § 58-48-20 (2017) does not define either "self-insured retention" or "deductible."

### B. Rules of Statutory Interpretation

When interpreting the parties' arguments, we must first determine the meaning of the terms in N.C. Gen. Stat. § 58-48-35. In reviewing the definitions of self-insured retention and deductible we are guided by several well-established principles of statutory construction.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citations omitted). "The best indicia of that intent are the [plain] language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix*

*Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted).

"When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010). Additionally, when dealing with insurance policies "[a]ny doubt as to coverage is to be resolved in favor of the insured." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986).

"Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Taylor v. Robinson*, 131 N.C. App. 337, 338, 508 S.E.2d 289, 291 (1998) (internal quotation marks, citations, and ellipses omitted). "Statutes *in pari materia* must be read in context with each other." *Cedar Creek Enters. v. Dep't of Motor Vehicles*, 290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976).

Further, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (quoting *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)).

### C. Persuasive Authority

The use and application of the terms "self-insured retention" or "deductible" in

our statutes is an issue of first impression. In reconciling the uses and application of "self-insured retention" or "deductible," it is helpful to review definitions in persuasive authorities and how other courts have addressed this issue. When this Court reviews an issue of first impression, it is appropriate to look to decisions from other jurisdictions for persuasive guidance. *See Skinner v. Preferred Credit*, 172 N.C. App. 407, 413, 616 S.E.2d 676, 680 (2005) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law."), *aff'd*, 361 N.C. 114, 638 S.E.2d 203 (2006). Our review has revealed the following:

The United States District Court for the Central District of California reviewed an analogous issue in *Gen. Star. Nat'l Ins. Corp. v. World Oil Co.*, 973 F. Supp. 943, 948-49 (C.D. Cal. 1997). In *Gen. Star*, an oil company insured its company automobiles using a policy with a deductible. Additionally, the oil company purchased a second policy to cover the deductible on the first policy. *Id.* at 945. The federal district court found a deductible

> is a portion of an insured loss for which the insured is responsible. The deductible is generally a specific sum that the insured must pay before the insurer owes its duty to indemnify the insured for a loss. A deductible usually relates only to the damages sustained by the insured, not to defense costs.

*Id.* at 948 (citation omitted).

The federal district court further found a self-insured retention is "a specific amount of loss that is not covered by the policy but instead must be borne by the insured . . . . [The policy] may provide that the insurer shall have the right, but not the duty, to assume charge of the defense and settlement of any claim, including those below the [self-insured retention]." *Id.*

The courts in Wisconsin agree with the federal district court's holding. *See Burgraff v. Menard, Inc.*, 853 N.W.2d 574, 581 (Wis. Ct. App. 2014) ("When an insured has a deductible, the insurance company is typically required to provide a defense from dollar one, in contrast, the insured whose coverage is subject to a self-insured retention is usually obligated to retain its own defense counsel." (citations omitted)).

Also, when considering the plain meaning and text of a statute, it is appropriate to review dictionary definitions and meanings of undefined terms in the statute. A "self-insured retention" is defined:

> The amount of an otherwise-covered loss that is not covered by an insurance policy and that usu. must be paid before the insurer will pay benefits <the defendant had a $1 million CGL policy to cover the loss, but had to pay a self-insured retention of $100,000, which it had agreed to do so that the policy premium would be lower>. Abbr. SIR. Cf. Deductible, n.

*Self-Insured Retention*, BLACK'S LAW DICTIONARY (11 ed. 2019). A "deductible" is defined as "Under an insurance policy, the portion of the loss to be borne by the insured before the insurer becomes liable for payment. Cf. Self-Insured Retention."

*Deductible,* BLACK'S LAW DICTIONARY (11 ed. 2019). The reasoning of these decisions and the differences in the definitions are instructive. A self-insured retention is clearly treated differently under the policy and in the law from a deductible.

### D. N.C. Gen. Stat. § 58-48-35(a)(2)

However, these differences do not end the analysis on this issue. N.C. Gen. Stat. §§ 58-48-35(a)(1) and 58-48-35(a)(2) must be read together. It would create an absurd result and violate § 58-48-35(a)(2) to strictly limit coverage of the statute to policies simply with a self-insured retention. First, a self-insured retention does not provide for the defense of the claim, unless otherwise provided for in the policy. A self-insured retention serves as a "first insurance" by the insured up to the dollar limit of the retained risk, when coverage available under the policy is then activated.

A deductible with a duty to defend, as in this policy and the facts before us, requires more involvement from an insurance carrier from the initiation of the claim. Plaintiff's involvement in the reduced insurer responsibilities of self-insured retention contravenes the purpose of the statute "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." N.C. Gen. Stat. § 58-48-5 (2017). Additionally, § 58-48-35(a)(2) provides Plaintiff shall have "rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent."

A right of Dallas National and later Freestone under the policy was to seek reimbursement of the deductible amount from Defendant, if advanced, and be

N.C. Ins. Guar. Ass'n v. Weathersfield mgmt., LLC.

*Opinion of the Court*

provided the safeguard of the collateral deposit in the event the financially struggling company faced further financial difficulties. Defendant's assignment of error is overruled.

## E. High-Net-Worth Employer

Defendant asserts the trial court improperly granted Plaintiff's summary judgment motion because Plaintiff is not a high-net-worth employer without derivative rights to reimbursement. We disagree.

Defendant's policy provides in its Benefits Deductible Endorsement:

> 4. We will pay the deductible amount for you, but you must reimburse us within 30 days after we send you notice that payment is due. If you fail to fully reimburse us, we may cancel the policy as provided in Part Six (Conditions), Section D. Cancelation, of the policy. We may keep the amount of unearned premium that will reimburse us for the payments we made. These rights are in addition to other rights we have to be reimbursed.

N.C. Gen. Stat. § 58-48-50(a) (2017) provides:

> Any person recovering under this Article shall be deemed to have assigned his rights under the policy or at law to the Association to the extent of his recovery from the Association. Every insured or claimant seeking the protection of this Article shall cooperate with the Association to the same extent as such person would have been required to cooperate with the insolvent insurer. The Association shall have no cause of action against the insured of the insolvent insurer for any sums it has paid out except such causes of action as the insolvent insurer would have had if such sums had been paid by the insolvent insurer. In the case of an insolvent insurer operating on a plan with assessment liability, payments of claims of the

N.C. Ins. Guar. Ass'n v. Weathersfield mgmt., LLC.

*Opinion of the Court*

> Association shall not operate to reduce the liability of insureds to the receiver, liquidator, or statutory successor for unpaid assessments.

Additionally, N.C. Gen. Stat. § 58-48-35(a)(2) provides Plaintiff: "[b]e deemed the insurer to the extent of the Association's obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer had not become insolvent.

Plaintiff's statutory grant of authority transfers all rights retained or assigned to the insolvent insurer under the Defendant's policy. The policy specifically retains and provides the insurer the right to seek indemnification for deductible payments it advanced and paid.

Defendant's assertion they are not covered under Plaintiff's statutory authority due to their net worth is misplaced. The section of § 58-48-50(a) containing the language of "net worth in excess of $50,000,000" pertains to Plaintiff's seeking reimbursement for the entire claim. *See N.C. Ins. Guar. Ass'n v. Bd. of Tr. of Guilford Tech. Cmty. Coll.*, 364 N.C. 102, 691 S.E.2d 694 (2010).

Plaintiff is not pursuing reimbursement for the entire claim in this matter, simply the deductible as defined in the insurance contract. This claim is allowed by statute and this Court's binding precedent. *Id.* Defendant's argument is overruled.

F. Handling of the Claim

Defendant asserts the trial court improperly granted Plaintiff's summary judgment when Plaintiff had failed in its obligation to Defendant in the handing of this claim. We disagree.

Defendant argues Plaintiff's purportedly mishandled the claim, which bars their recovery. Nowhere in the statutes nor the insurance policy do we find a clause barring the insurer's or Plaintiff's recovery for reimbursement of the deductible for purported mismanagement of a claim. Defendant does not cite any case or authority to relieve them from this contractual obligation. Defendant's argument is dismissed.

### E. Material Facts

Defendant asserts genuine issues of material fact remain and argues the trial court erred by granting summary judgment for Plaintiff. Defendant does not highlight or argue any issue of fact that remains undecided. Where a party "does not set forth any legal argument or citation to authority to support the contention, [it is] deemed abandoned." *State v. Evans* 251 N.C. App. 610, 625, 725 S.E.2d 444, 45 (2017). This issue is abandoned and dismissed.

### VI. Conclusion

Viewed in the light most favorable to Defendants and giving them the benefit of any disputed inferences, no genuine issues of material fact exist. Plaintiff had statutory authority to step into the shoes of the insolvent insurer and be subrogated

N.C. Ins. Guar. Ass'n v. Weathersfield mgmt., LLC.

*Opinion of the Court*

to seek reimbursement for amounts advanced toward the stated deductible as provided and determined by Defendant's insurance policy and contract.

Plaintiff was entitled to summary judgment as a matter of law. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges BRYANT and BROOK concur.