STATE OF NORTH CAROLINA v. DAVID ALLEN SOKOLOWSKI

No. 498A94

(Filed 6 September 1996)

1. **Indigent Persons §§ 19, 23, 24 (NCI4th)— noncapital first-degree murder—funds for a psychiatrist, ballistics expert, and behavioral pharmacologist—denied**

   The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's motion for funds to hire a psychiatrist or psychologist, a forensic pathologist, a firearms and ballistics expert, and a behavioral pharmacologist. Defendant testified that he did not want to plead insanity and self-defense, upon which he relied, was inconsistent with an insanity plea; testimony presented at trial was substantially the same testimony which defendant argues that his forensic pathologist and ballistics expert would have presented; defendant fails to show how these experts could have aided him in his self-defense theory; and expert testimony from a behavioral pharmacologist on the victim's cocaine use and violent nature would have been cumulative. Defendant did not show that retention of the experts would materially assist in the preparation of his case.

   **Am Jur 2d, Expert and Opinion Evidence §§ 13, 14.**

2. **Searches and Seizures § 60 (NCI4th)— noncapital first-degree murder—warrantless search of defendant's home—defendant's consent**

   The trial court did not err in a noncapital first-degree murder prosecution by overruling defendant's motion to suppress evidence seized in a warrantless search of his home and evidence seized during a search pursuant to warrants based on evidence

obtained in the warrantless search. The taking of eight deputies to a rural area where someone is burning body parts as a result of a possible homicide is not imprudent or excessive, especially in light of the information that defendant had stated that he would shoot any law enforcement officers who came to his house; the officers drew their weapons and yelled only when the defendant reached for his gun; the officers holstered their weapons once defendant was disarmed; the actions of the officers could not have coerced the defendant into consenting to the search; defendant twice consented; and defendant's argument that the consent was meaningless because it was not explained to him that he could not possibly negate the discoveries in the fire unless he then consented has been rejected by the U.S. Supreme Court.

**Am Jur 2d, Searches and Seizures § 83.**

**Validity of consent to search given by one in custody of officers. 9 ALR3d 858.**

**Constitutionality of searching premises without warrant as incident to valid arrest—Supreme Court cases. 108 L Ed 2d 987.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Battle, J., at the 14 March 1994 Criminal Session of Superior Court, Orange County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 12 March 1996.

The defendant was tried for first-degree murder in a case in which the State did not seek the death penalty. The State's evidence showed that the defendant shot and killed Rubel Hill. He then cut the body into several parts and put them in a fire in his backyard. The crime was discovered when a house guest of the defendant's called Major Don Truelove of the Orange County Sheriff's Department and reported he had seen several body parts in the defendant's home and had seen the defendant put body parts in the fire.

Major Truelove and seven other deputy sheriffs went to the defendant's home and removed a partially burned skull and human torso from the fire. The defendant told Major Truelove that the body was that of Rubel Hill. He said that Mr. Hill had tried to shoot him and that he had shot Mr. Hill.

STATE v. SOKOLOWSKI

[344 N.C. 428 (1996)]

The defendant was convicted of first-degree murder and sentenced to life in prison.

The defendant appealed.

*Michael F. Easley, Attorney General, by Thomas F. Moffitt, Special Deputy Attorney General, for the State.*

*William M. Sheffield for defendant-appellant.*

WEBB, Justice.

[1] The defendant's first assignment of error deals with his motion that he be furnished funds to retain experts and that the case be continued to allow him time to confer with the experts. The defendant made a motion pursuant to N.C.G.S. § 7A-450(b) that he be furnished funds to hire a psychiatrist or a psychologist, a forensic pathologist, a firearms and ballistics expert, and a behavioral pharmacologist. The court conducted an *ex parte* hearing on the motion.

The defendant testified at the hearing that he did not want to plead insanity. He said he did not trust Dr. Rollins, the State's psychiatrist. His attorney argued that there was a substantial basis for pleading insanity and that he needed the assistance of an expert who was not employed by the State to develop this defense. The court noted that the defendant had not pleaded insanity as a defense and had not made a showing that sanity at the time of the offense was likely to be a significant factor in the trial.

The defendant argued that he needed a forensic pathologist and a ballistics expert because the State had recently filed an amended answer to a request for a bill of particulars, in which it said the State would contend the deceased had been shot in the chest with a shotgun and in the head with a pistol. The State had previously said it would rely only on evidence that the deceased was shot in the chest with a shotgun. The defendant says the claim by the State that the deceased had been shot in the head as well as the chest could affect the proof of premeditation and deliberation, and he needed experts to meet this proof. The superior court held "that the defendant has failed to demonstrate that he will be deprived of a fair trial without the expert[s'] assistance or that there is a reasonable likelihood that they will materially assist the defendant in the preparation of his case."

The defendant argued that he needed a behavioral pharmacologist to develop a self-defense plea. He says that there was evidence

STATE v. SOKOLOWSKI

[344 N.C. 428 (1996)]

that the deceased used crack cocaine and that a behavioral pharmacologist could testify that consistent ingestion of cocaine leads to more violent mood swings. The court held the defendant had not made a showing "that there is a reasonable likelihood that such an expert would materially assist him [the defendant] in the preparation of his case."

The superior court denied the defendant's motion for the retention of experts. We hold that the superior court was not in error by denying the motion to provide funds for the hiring of experts.

As to the retention of a psychiatrist or psychologist to develop an insanity defense, the defendant testified he did not want to plead insanity. Self-defense, upon which defendant relied, was inconsistent with an insanity plea. Insanity was not a "significant factor" in his defense. State v. Moore, 321 N.C. 327, 344, 364 S.E.2d 648, 657 (1988).

As to the retention of a forensic pathologist and a ballistics expert, the defendant contends he needed them to rebut the State's evidence that the deceased was shot in the head as well as the chest. The pathologist who testified for the State said the cause of death was the shotgun wound to the neck and chest, and she could not tell when the bullet wound to the head was inflicted. The SBI ballistics expert who testified for the State said the bullet which was removed from the victim's head was too deformed to determine if it came from the defendant's gun.

This testimony is substantially the same testimony which the defendant argues that his own experts would have presented. We also note that there was no significant controversy as to whether the defendant shot the victim. He admitted that he did. He only contended that he did it in self-defense. The defendant fails to show how these experts could have aided him in this theory. He also fails to show how he could have refuted, challenged, or contradicted the testimony presented at trial or why he would have wanted to do so. Any additional experts would have been repetitious. The defendant was not prejudiced by the denial of his request for funds for either of these experts.

The State argues, and we agree, that expert testimony on the victim's cocaine use and violent nature would have been cumulative. The defendant was able to prove the victim's violent nature through the testimony of the victim's wife and the victim's extensive criminal record, which included convictions for breaking and entering, felo-

nious assault and battery, assault with a deadly weapon with intent to kill inflicting serious injury, and felonious drug charges. The defendant also introduced the victim's prison records showing numerous infractions, including possession of weapons and assaults. This evidence clearly demonstrated the victim's own violent tendencies. Testimony that cocaine use could make a person violent was not necessary.

The defendant did not show. the retention of the experts would materially assist in the preparation of his case, and it was not error to deny his motion to furnish funds to hire the experts. *State v. Parks*, 331 N.C. 649, 658, 417 S.E.2d 467, 472 (1992). When the court denied the defendant's motion to retain the experts, the defendant did not need time to confer with them. Thus, it was not error to overrule his motion for a continuance.

This assignment of error is overruled.

[2] The defendant next assigns error to the overruling of his motion to suppress evidence seized in a warrantless search of his home. He also moved to suppress evidence seized during a search pursuant to warrants which were procured based on the evidence obtained as a result of the warrantless search. He also moved for the suppression of any statements he made when confronted with the evidence seized as a result of the warrantless search. The defendant contends he was coerced into giving his consent.

The court had a hearing on the defendant's motion. The evidence at the hearing showed that when Major Truelove received the call telling him about the burning of the body, the caller also told him the defendant was armed and had said he would shoot any law enforcement officer who came on his property. Major Truelove had seven deputy sheriffs accompany him to the defendant's home.

When the officers arrived at the defendant's home, he was standing in the driveway with a pistol in his belt. The defendant reached for his pistol, but after being told not to do so by the officers, who had drawn their weapons, the defendant did not touch his pistol. The officers disarmed the defendant.

The officers requested permission to search the house, and the defendant said, "I don't care." The defendant accompanied the officers when they searched his house. While some of the officers were searching the house, two officers reported to Major Truelove that they had found a fire in the backyard with a human head and torso in

## STATE v. SOKOLOWSKI

[344 N.C. 428 (1996)]

it. At that time, the defendant was handcuffed and warned of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966).

At this time, Major Truelove instructed two deputies to get a statement from the defendant. The two deputies took the defendant to a patrol car where he signed a consent to search form and a waiver of his *Miranda* rights. The defendant then asked for an attorney, and the interrogation ceased.

The court found facts consistent with the evidence and denied the defendant's motions. The defendant concedes that there was no purposeful coercion of the defendant but argues that the eight officers who arrived at the defendant's home acted in a manner which had a coercive effect. He says several of the officers shouted at the defendant and pointed guns at him.

We hold that the warrantless search was based upon consent and, therefore, was valid. The taking of eight deputies to a rural area where someone is burning body parts as a result of a possible homicide is not imprudent or excessive, especially in light of the information that the defendant had stated that he would shoot any law enforcement officers who came to his house. Further, the officers drew their weapons and yelled only when the defendant reached for his gun. Once the defendant was disarmed, the officers holstered their weapons. The actions of the officers could not have coerced the defendant into consenting to the search. The defendant twice consented to the search. First, he consented orally, then in writing by signing the consent to search form. The defendant's argument that the written consent was "meaningless" because it was not "explained to him that he could [not] possibly negate the discoveries in the fire unless he then consented" has been rejected by the United States Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854 (1973). In that case, the Court held that "neither this Court's prior cases[] nor the traditional definition of 'voluntariness' requires proof of knowledge of a right to refuse as the *sine qua non* of an effective consent to a search." *Id.* at 234, 36 L. Ed. 2d at 867.

The facts found by the court support the conclusion that the consent to search was voluntarily given. Hence, the search was valid, and the trial court properly refused to suppress the evidence.

This assignment of error is overruled.

NO ERROR.