DAVIS, Judge.
This case presents the issue of whether conduct by law enforcement officers during a "knock and talk" at the defendant's home during the early morning hours coerced her into involuntarily consenting to a warrantless search of her home. Courtney Nicole Carpenter ("Defendant") appeals from her convictions for possession of methamphetamine and possession of drug paraphernalia. On appeal, Defendant argues that the trial court erred by (1) denying her motion to suppress the items seized during the search of her home on 25 September 2013; and (2) sentencing her to an improper term of supervised probation. After careful review, we conclude that she received a fair trial free from error but remand for resentencing.
Factual and Procedural Background
Based on a tip that a man named Chad Clark was manufacturing methamphetamine at Defendant's home, deputies with the Avery County Sheriff's Office approached the home in the early morning hours of 25 September 2013 to conduct a "knock and talk" investigation.[1] They did not possess a search warrant for the property. Detective Frank Catalano and Deputy Daniel Jones went to the front door of Defendant's single-wide trailer while Deputies Tim Clawson, Casey Lee, and Brett Stockton went to the back door. All of the officers wore sidearms and protective vests, and Detective Catalano also had an AR-15 assault rifle strapped across his chest, which was pointed downward at all times.
Detective Catalano knocked on the front door and identified himself as an officer of the Avery County Sheriff's Office. The door was immediately opened by a man named Christopher Morrison who then granted Detective Catalano's request to come inside. As he entered the home, Detective Catalano noticed Defendant-who was already awake because of the arrival of her cousin's boyfriend 30 minutes earlier-walking down a hallway toward him. Detective Catalano informed Defendant that he was with the Avery County Sheriff's Office and was there because of a tip that Clark was manufacturing methamphetamine at the home.
Defendant told Detective Catalano that no methamphetamine was being manufactured in the home and that Clark was not present. Detective Catalano asked Defendant if he and the sheriff's deputies with him could search her residence to make sure Clark was not present and that methamphetamine was not being manufactured there. Defendant said they "could look" but to make sure that they did not wake her nine-year-old daughter who was sleeping in an adjoining room. At no time did any of the officers raise their voices when talking to Defendant or point their weapons at her.
Detective Catalano and the deputies proceeded to search the home. Defendant was seated on a loveseat in the living room when Deputy Stockton asked her to move to another sofa so that he could search the area where she had been sitting. After she stood up, Deputy Stockton observed a small black box, which was described as approximately five inches long and three inches wide and large enough to contain index cards, between the cushions behind where she had been sitting. Upon opening the box, he discovered methamphetamine and various items of drug paraphernalia inside. Also in the black box was a small round box with Defendant's initials inside it. Without advising Defendant of her Miranda rights, Deputy Stockton asked whether these items belonged to her, and she admitted that they did.
On 13 April 2015, Defendant was indicted for possession of methamphetamine and possession of drug paraphernalia based on the evidence seized from the black box. Defendant filed a motion to suppress on 5 November 2015 in which she sought the suppression of (1) the items seized pursuant to the search of her home; and (2) her statements to law enforcement officers on the date of the search.
A suppression hearing was held before the Honorable Alan Z. Thornburg in Avery County Superior Court on 29 February 2016. Testimony was given by Detective Catalano, Deputy Stockton, and Defendant. At the conclusion of the hearing, the trial court granted Defendant's motion to suppress with respect to her incriminating statements on the ground that her Miranda rights had been violated. However, the court denied her motion with respect to the items seized from the black box in her trailer. On 13 April 2016, the trial court issued separate written orders addressing each of these issues.
A jury trial was held beginning on 29 February 2016, and Defendant was convicted of possession of methamphetamine and possession of drug paraphernalia. For the methamphetamine conviction, the trial court sentenced her to 6 to 17 months imprisonment, suspended the sentence, and placed her on 36 months of supervised probation. She was sentenced to 45 days imprisonment for the drug paraphernalia conviction. Defendant filed a timely written notice of appeal.
Analysis
I. Motion to Suppress
Defendant makes two arguments with respect to the trial court's denial of her motion to suppress the items seized from her home: (1) her consent to search the trailer was coerced and therefore legally invalid; and (2) Deputy Stockton exceeded the reasonable scope of any consent given by her when he opened the black box. We address each argument in turn.
A. Validity of Consent
As an initial matter, we must determine whether the first issue is properly before us. Defendant acknowledges that although she filed a motion to suppress the seized items, she failed to object when the State sought to admit that evidence at trial. Our Supreme Court has explained that
[t]o preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial. [Defendant's] failure to object at trial waived his right to have this issue reviewed on appeal.
State v. Golphin , 352 N.C. 364, 463, 533 S.E.2d 168, 232 (2000) (citations omitted), cert. denied , 532 U.S. 931, 149 L.Ed. 2d 305 (2001). Accordingly, Defendant has failed to properly preserve this issue for appellate review.
However, "to the extent [a] defendant fail[s] to preserve issues relating to [a] motion to suppress, we review for plain error" if the defendant "specifically and distinctly assign[s] plain error" on appeal. State v. Waring , 364 N.C. 443, 468, 508, 701 S.E.2d 615, 632, 656 (2010), cert. denied , 565 U.S. 832, 181 L.Ed. 2d 53 (2011). Because Defendant has made such a specific assignment, we review the issues raised by Defendant on appeal for plain error.
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations, quotation marks, and brackets omitted).
In conducting our review under the plain error standard, we must first determine whether the trial court did, in fact, err in denying Defendant's motion to suppress. See State v. Oxendine , --- N.C. App. ----, ----, 783 S.E.2d 286, 292, disc. reviewdenied , --- N.C. ----, 787 S.E.2d 24 (2016) ( "The first step under plain error review is ... to determine whether any error occurred at all.").
"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Jackson , 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (citation and quotation marks omitted). When "the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." State v. Evans , --- N.C. App. ----, ----, 795 S.E.2d 444, 453-54 (2017) (citation and quotation marks omitted). Conclusions of law are reviewed de novo . Id. at ----, 795 S.E.2d at 454.
In its order denying Defendant's motion to suppress, the trial court made the following findings of fact:
1. In the early morning hours of September 25, 2013, deputies from the Avery County Sheriff's Office, having received a tip from a confidential informant that methamphetamine was being manufactured at the Defendant's residence by an individual named Chad Clark, conducted a knock and talk investigation at Defendant's residence.
2. Detective Frank Catalano of the Avery County Sheriff's Office went to the front door of the residence with Deputy Jones while other deputies remained stationed outside the residence. Detective Catalano knocked on the front door and announced his presence, identifying himself as being from the Avery County Sheriff's Office.
3. The door was immediately opened by an individual named Christopher Morrison. Detective Catalano asked if he could come inside and Morrison opened the door fully and said that Catalano could come in. At the time Detective Catalano was carrying a pistol in a holster on his side and an AR-15 rifle across his chest, but the rifle was pointed down at the ground and was never pointed at Morrison or any other person.
4. As Detective Catalano entered the residence he saw the defendant coming toward him from the rear part of the residence. He advised the Defendant that he was with the Avery County Sheriff's Office and that the Office had received a tip from an informant that methamphetamine was being manufactured at the Defendant's residence by an individual named Chad Clark.
5. The Defendant responded to Detective Catalano that there was no methamphetamine being manufactured in her home and that Chad Clark was not there.
6. Detective Catalano asked the Defendant if he and the other deputies with him could search her residence to make sure that Chad Clark was not there and that no methamphetamine was being manufactured there, and the Defendant told them to go ahead and look, but to make sure that they did not wake up her nine year old daughter who was asleep in an adjoining room.
7. After receiving the Defendant's consent to search, Detective Catalano and four other officers proceeded to search inside and outside the Defendant's residence and a shed on her property. All of the officers were armed, but at no time did any of them raise their voices when talking with the Defendant or point their weapons at her.
8. In the course of the search, when the Defendant was seated on a loveseat in her living room, Deputy Brett Stocton [sic] asked her to stand up and move to another sofa in the room so he could search the area where she had been sitting. When she complied, Deputy Stocton [sic] observed a small black box large enough to hold index cards directly underneath where the Defendant had been sitting. The box was found to contain methamphetamine, various items of drug paraphernalia, and a small round box with the Defendant's initials "CNC" inside it in two places. Afterward, she was taken into custody and charged with Possession of Methamphetamine and Possession of Drug Paraphernalia.
9. At no time did the Defendant withdraw her consent to search her residence.
The trial court then made the following pertinent conclusions of law:
2. At the time Detective Catalano and the other officers approached the Defendant's residence, they were entitled to conduct a knock and talk investigation into the tip which they had received from an informant.
3. When Detective Catalano knocked on the door of Defendant's residence it was very early in the morning and the door was immediately opened by a person who reasonably appeared to have authority to admit him to the residence.
4. Upon being admitted to the residence, Detective Catalano was immediately approached by the Defendant, the owner of the residence. Prior to conducting any search, Detective Catalano identified himself, explained his reason for being there, and asked consent to search the residence to look for evidence of methamphetamine being manufactured or Chad Clark being present. Neither Detective Catalano nor any other officer pointed their weapons at the Defendant or threatened her in any way.
5. The Defendant gave her voluntary consent to a search of her residence by the officers.
6. The Defendant's consent to search was not the product of duress or coercion, and was not obtained by any violation of the law or of the Defendant's constitutional rights.[2]
The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Smith , 346 N.C. at 798, 488 S.E.2d at 213 (citation and quotation marks omitted).
However, "a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." State v. Jones , 161 N.C. App. 615, 619, 589 S.E.2d 374, 376 (2003), appeal dismissed and disc. review denied , 358 N.C. 379, 597 S.E.2d 770 (2004). "For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary." Smith , 346 N.C. at 798, 488 S.E.2d at 213. "The only requirement for a valid consent search is the voluntary consent given by a party who had reasonably apparent authority to grant or withhold such consent." State v. Houston , 169 N.C. App. 367, 371, 610 S.E.2d 777, 780, appeal dismissed and disc. review denied , 359 N.C. 639, 617 S.E.2d 281 (2005).
"Whether consent to a search is obtained voluntarily or by coercion is a question of fact to be determined from the totality of all the circumstances." Schiffer , 132 N.C. App. at 29, 510 S.E.2d at 169 (citation and quotation marks omitted). "[W]hile the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." State v. Kuegel , 195 N.C. App. 310, 315, 672 S.E.2d 97, 100 (citation and quotation marks omitted), disc. review denied , 363 N.C. 378, 679 S.E.2d 396 (2009). In determining whether consent to a search was voluntary, "the weight to be given the evidence is ... a determination for the trial court, and its findings are conclusive when supported by competent evidence." State v. Hernandez , 170 N.C. App. 299, 310, 612 S.E.2d 420, 427 (2005) (citation and quotation marks omitted).
On appeal, Defendant does not challenge any of the trial court's above-quoted findings of fact. Accordingly, those unchallenged findings are binding on appeal. See Evans , --- N.C. App. at ----, 795 S.E.2d at 453-54. Defendant argues, however, that these findings did not support the trial court's ultimate determination that Defendant's consent was voluntarily given as opposed to being the product of duress or coercion.
We find instructive several of our past decisions addressing the voluntariness of a defendant's consent to a search of his home. In State v. Stover , 200 N.C. App. 506, 685 S.E.2d 127 (2009), several officers went to the defendant's home to conduct a knock and talk investigation into reported drug dealing. After smelling marijuana and hearing a noise coming from the back of the home, one of the officers went to that side of the residence and observed the defendant hanging halfway out of a window. The officer drew his weapon and aimed it at the defendant. After the defendant said "[d]on't shoot me. I'm not going anywhere" and provided his name, the officer lowered his gun but did not holster it. Id. at 507, 685 S.E.2d at 129. The defendant then admitted that there was marijuana in the home and told the officer to "[c]ome and get it." Id. This prompted a second officer to kick in the defendant's front door and pull the defendant from the window back into the home. The officer then patted the defendant down, and other officers came into the home to conduct a protective sweep. Id. at 508, 685 S.E.2d at 129-30.
An officer then walked the defendant over to a neighbor's home so that the defendant could drop off his young child. When they returned to the home, the defendant admitted that he was a marijuana dealer and was placed in handcuffs. Officers then asked him whether they could search the home, and he consented. Id. at 508, 685 S.E.2d at 130.
On appeal from the denial of his motion to suppress evidence seized during the ensuing search, the defendant argued that "the officers intimidated [him], rendering his consent to a more thorough search of the house invalid[.]" Id. at 510, 685 S.E.2d at 131. In rejecting this argument, we explained as follows:
[The officer who went to the back of the defendant's home] initially aimed his gun at defendant when he perceived that defendant was attempting to flee the premises. However, he lowered it promptly. Though the officers kicked down the door as they entered defendant's house, they did not place him in handcuffs immediately. Rather, defendant sat in his own living room and conversed freely with various officers. One officer even escorted him to his neighbor's house in order to find someone to care for his child. Two officers asked defendant's permission to search the house after they had conducted their initial protective sweep. Defendant consented. Although these facts are not completely one-sided as to the issue of voluntariness, we hold that the evidence is sufficient to support the trial court's findings of fact and its determination that defendant's consent was voluntary.
Id. at 514, 685 S.E.2d at 133.
In State v. Sokolowski , 344 N.C. 428, 474 S.E.2d 333 (1996), eight deputy sheriffs arrived at the defendant's home after receiving a tip that he had burned a body, was armed, and would shoot any law enforcement officers who came to his residence. Id. at 431, 474 S.E.2d at 335. Upon the deputies' arrival, the defendant was standing in his driveway with a pistol in his belt. When he started to reach for the gun, the deputies drew their weapons and yelled at him not to touch it. The deputies then requested permission to search the home, and the defendant replied "I don't care." Id. at 432, 474 S.E.2d at 336. The officer's subsequent search of the home uncovered incriminating evidence. Id. at 432-33, 474 S.E.2d at 336.
On appeal from the denial of his motion to suppress, the defendant argued that the officers had created a coercive environment that invalidated his consent to search by virtue of the number of officers present and the fact that they had pointed guns at him and yelled at him. Id. at 433, 474 S.E.2d at 336. Our Supreme Court, however, held that under the circumstances "[t]he actions of the officers could not have coerced the defendant into consenting to the search." Id.
In the present case, the uncontested findings of fact made by the trial court established the following: (1) during the early morning hours of 25 September 2013, Detective Catalano and Deputy Jones approached the front door of Defendant's mobile home to conduct a knock and talk investigation; (2) Detective Catalano possessed a holstered sidearm and an assault rifle strapped across his chest-neither of which were drawn at any time; (3) Detective Catalano was given permission to enter the home by Defendant's guest; (4) Defendant walked out to the living room, and Detective Catalano identified himself as being employed by the Sheriff's Office and stated that he was there based on a tip that Clark was manufacturing methamphetamine in her home; (5) Detective Catalano requested Defendant's consent to search her trailer to make sure that Clark was not there and that methamphetamine was not being manufactured in her home; and (6) Defendant consented to the search by stating that the officers "could look" as long as they did not wake her child. In light of all of these circumstances, we are not persuaded that the trial court erred in finding that her consent was voluntarily given rather than improperly coerced.
Defendant's initial brief contains arguments suggesting that the knock and talk itself was unconstitutional because it occurred at night and three officers went to the back door of the mobile home while two went to the front door. In her reply brief, however, Defendant expressly states that the "issue presented to this Court is not whether the knock and talk itself was unconstitutional , but rather whether the police conduct during the knock and talk coerced Ms. Carpenter's consent to search." (Emphasis added.) Accordingly, our review of the knock and talk procedure utilized here extends only to whether it created a coercive environment that rendered Defendant's consent involuntary.[3] We are satisfied that it did not.
The mere fact that the request for Defendant's consent to a search of her trailer occurred during the early morning hours does not-without more-require a finding that Defendant's consent was involuntary. Moreover, the evidence does not demonstrate that before she gave consent Defendant was even aware that officers were present at the back door of her home. Accordingly, their presence could not have contributed to any coercive atmosphere. See State v. Marrero , --- N.C. App. ----, ----, 789 S.E.2d 560, 565 (2016) (holding that presence of multiple officers outside home did not contribute to coercive environment that would invalidate defendant's voluntary consent because "there was no evidence that defendant was aware of their presence...."). Therefore, we conclude that the trial court did not err in ruling that Defendant voluntarily consented to the search of her home.
B. Scope of Consent
Defendant's next argument is that Deputy Stockton exceeded the scope of Defendant's consent to search her home by looking inside the black box and, as a result, conducted an unreasonable search under the Fourth Amendment. As an initial matter, the State argues that this issue is not preserved for appellate review because Defendant failed to assert this particular argument either in connection with her motion to suppress or as an objection at trial.
While it is generally true that constitutional issues will not be considered for the first time on appeal, we have identified an exception in instances where the unpreserved constitutional issue is evidentiary in nature. In the recent case of State v. Miller , --- N.C. App. ----, 795 S.E.2d 374 (2016), temp. stay allowed , --- N.C. ----, 794 S.E.2d 534 (2017), the defendant argued on appeal that the trial court erred in admitting certain evidence found during a search of his vehicle because the search had violated his Fourth Amendment rights. The State argued that the defendant had waived any challenge to the constitutionality of the search by failing to raise the issue either in a pretrial motion to suppress or in an objection at trial. Id. at ----, 795 S.E.2d at 376. We rejected this argument, explaining as follows:
While we recognize the merit to the State's position, this Court has applied plain error review to similar evidentiary challenges involving unpreserved constitutional claims. See, e.g., State v. Jones , 216 N.C. App. 225, 229-30, 715 S.E.2d 896, 900-01 (2011), appeal dismissed and disc. review denied , 365 N.C. 559, 723 S.E.2d 767 (2012); State v. Mohamed , 205 N.C. App. 470, 474-76, 696 S.E.2d 724, 729-30 (2010). In cases where we have declined to do so, our Supreme Court has remanded for plain error review. See, e.g., State v. Bean , 227 N.C. App. 335, 336-37, 742 S.E.2d 600, 602, disc. review denied , 367 N.C. 211, 747 S.E.2d 542 (2013). Accordingly, we must examine the evidence that was before the trial court to determine if it committed plain error by allowing the admission of the challenged evidence.
Id. at ----, 795 S.E.2d at 376 (citation, quotation marks, brackets, and footnote omitted). We therefore review for plain error the issue of whether the deputy's search exceeded the scope of Defendant's consent.
As explained above, we would ordinarily review a trial court's order denying a motion to suppress to determine whether its findings are supported by competent evidence and whether those findings, in turn, support its conclusions of law. See Jackson , 368 N.C. at 78, 772 S.E.2d at 849. However, because Defendant's motion to suppress did not include the scope of consent argument and, consequently, the trial court did not make findings and conclusions on this issue, "we must simply examine the information before the trial court in order to determine if it committed plain error by allowing the admission of the challenged" evidence. Mohamed , 205 N.C. App. at 476, 696 S.E.2d at 730.
"[A] consensual search is limited by and to the scope of the consent given." State v. Ladd , --- N.C. App. ----, ----, 782 S.E.2d 397, 400 (2016). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" State v. Stone , 362 N.C. 50, 53, 653 S.E.2d 414, 417 (2007) (citation and quotation marks omitted). Moreover, "the scope of a search is generally defined by its expressed object." Id. at 55, 653 S.E.2d at 418 (citation and quotation marks omitted).
A defendant consenting to a search may specifically limit the scope of that search or revoke consent to search at any time. See, e.g. , State v. Jones , 96 N.C. App. 389, 397, 386 S.E.2d 217, 222 (1989) ("Because defendant gave the Trooper permission to search the entire contents of defendant's suitcase, and did not retract or limit the consent, we determine that the Trooper had defendant's consent to open the package...."), appeal dismissed and disc. review denied , 326 N.C. 366, 389 S.E.2d 809 (1990). Moreover, as long as no such limitation or revocation has occurred, law enforcement officers are permitted to open containers that could contain the items being sought. See, e.g. , id. ; Stone , 362 N.C. at 58, 653 S.E.2d at 420 ("[I]t was objectively reasonable for the police to conclude that the general consent to search the defendant's car included consent to search containers within that car which might bear drugs. No additional, specific consent was necessary." (citation, quotation marks, and brackets omitted)).
In the present case, Defendant argues that her grant of permission for the officers to search for Clark or the presence of methamphetamine manufacturing did not include consent to search a "small black box large enough to hold index cards." We disagree. Methamphetamine may be manufactured in a variety of ways,[4] and we are unable to say there is no conceivable way that evidence of methamphetamine manufacturing could have existed in a container the size of the black box seized from Defendant's residence. Moreover, at no time did Defendant limit or revoke her consent to the search. Accordingly, we conclude that the search of the black box did not exceed the scope of Defendant's consent.
II. Sentencing
Finally, Defendant argues that the trial court erred by imposing 36 months of supervised probation. The State concedes error on this issue.
Defendant was convicted of a felony and sentenced to a community punishment.[5] " N.C. Gen. Stat. § 15A-1343.2(d)(3) clearly mandates that where a felon is sentenced to community punishment, ... probation may not be for more than thirty months, unless the trial court specifically finds that a longer term is required." State v. Mucci , 163 N.C. App. 615, 624-25, 594 S.E.2d 411, 418 (2004). Because the trial court did not make such a finding here, it erred by imposing a term of supervised probation of 36 months. Accordingly, "we must remand this case for re-sentencing in order for the trial court to either impose a probation term consistent with the statute or to make the appropriate finding of fact that a longer probationary period is necessary." Id. at 625, 594 S.E.2d at 418.
Conclusion
For the reasons stated above, we (1) conclude that the trial court did not err by denying Defendant's motion to suppress evidence obtained during the search of her home; and (2) remand for resentencing.
NO PLAIN ERROR; REMANDED FOR RESENTENCING.
Report per Rule 30(e).
Chief Judge McGEE and Judge McCULLOUGH concur.
Judge McCULLOUGH concurred in this opinion prior to 24 April 2017.

" 'Knock and talk' is a procedure utilized by law enforcement officers to obtain a consent to search when they lack the probable cause necessary to obtain a search warrant." State v. Smith, 346 N.C. 794, 800, 488 S.E.2d 210, 214 (1997).

Although the trial court designated these latter two determinations as "conclusions of law," we treat the determination regarding whether consent was voluntarily given as a finding of fact. See State v. Schiffer, 132 N.C. App. 22, 29, 510 S.E.2d 165, 169 (voluntariness of consent to search is question of fact), appeal dismissed and disc. review denied, 350 N.C. 847, 539 S.E.2d 5 (1999).

Thus, we do not reach the issue of whether a knock and talk conducted during the middle of the night is inherently violative of the Fourth Amendment.

Courts have explained, for example, that the "shake and bake" or "one pot" method of production involves manufacturing methamphetamine in a vessel as small as a soda bottle. See, e.g., United States v. Wells, 706 F.3d 908, 911 (8th Cir. 2013) ; United States v. Hodge, 714 F.3d 380, 382 (6th Cir.), cert. denied, --- U.S. ----, 134 S. Ct. 286, 187 L.Ed. 2d 206 (2013).

A "[c]ommunity punishment is defined by statute as a sentence in a criminal case that does not include an active punishment or assignment to a drug treatment court, or special probation...." State v. Allen, ---N.C. App. ----, ----, 790 S.E.2d 588, 591 (2016) (citation, quotation marks, and brackets omitted).